Darrell J. **MATTHEWS**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 90–410.

District of Columbia Court of Appeals.

Argued Nov. 26, 1991.

Decided Dec. 18, 1991.

M. Elizabeth Kent, Washington, D.C., appointed by the court, for appellant.

Bernadette C. Sargeant, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Roy W. McLeese, III, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before TERRY and WAGNER, Associate Judges, and GALLAGHER, Senior Judge.

TERRY, Associate Judge:

Appellant Matthews and a co-defendant, Timothy Roberson, were convicted of distributing cocaine, in violation of D.C.Code § 33–541(a)(1) (1988). The government's evidence established that Matthews and Roberson sold a quantity of crack cocaine, which Matthews touted as "good stuff," to an undercover police officer. Both defendants presented evidence that they were not involved in any drug transaction. On appeal Matthews contends that the trial court abused its discretion by failing to ask certain questions on *voir dire* of the jury that his counsel had specifically requested. We find no abuse of discretion and, accordingly, affirm the conviction.

"*Voir dire* serves to assure an accused, as far as possible, an impartial jury by exposing any juror biases that might affect the verdict. ... How such biases will be uncovered during *voir dire* is left to the trial court's broad discretion, and its rulings will be affirmed on appeal unless the record reveals an abuse of discretion coupled with substantial prejudice to the defendant." *Boertje v. United States,* 569 A.2d 586, 592 (D.C.1989) (citations omitted). Matthews contends that the court abused its discretion by limiting the scope of the

"*Ridley* question"[1] and by refusing to ask certain other questions of the prospective jurors, particularly "a question about drug use by family members or friends and whether that would affect the juror's ability to be fair, the feeling toward drugs in general, use of illegal drugs."

We are frankly troubled by the court's refusal to ask the latter question, since we have specifically recognized drug-related crime as one of several "controversial matters requiring careful inquiry" during *voir dire. Cordero v. United States,* 456 A.2d 837, 842 (D.C.1983). Such a question should generally be asked on *voir dire* if either counsel requests it. Nevertheless, after reviewing the entire record, we are satisfied that the *voir dire* as a whole was sufficient to bring to light any potential biases among the venire members, and that there was, consequently, no abuse of discretion. *See Ristaino v. Ross,* 424 U.S. 589, 594–595, 96 S.Ct. 1017, 1020–1021, 47 L.Ed.2d 258 (1976); *Boertje v. United States, supra,* 569 A.2d at 592–593; *Cordero v. United States, supra,* 456 A.2d at 841; *Musgrove v. United States,* 441 A.2d 980, 983 (D.C.1982); *United States v. Toomey,* 764 F.2d 678, 682 (9th Cir.1985), *cert. denied,* 474 U.S. 1069, 106 S.Ct. 828, 88 L.Ed.2d 799 (1986); *United States v. Brunty,* 701 F.2d 1375, 1378–1379 (11th Cir.), *cert. denied,* 464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983); *United States v. Rojas,* 537 F.2d 216, 219 (5th Cir.1976), *cert. denied,* 429 U.S. 1061, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977). We said in *Boertje:*

> In this case it would probably have been the wiser course to explore more thoroughly the possibility of juror prejudice by including a question along the lines suggested by Boertje. Nevertheless, we are satisfied that the question ultimately asked by the court sufficiently probed the prospective jurors' ability to be impartial.

569 A.2d at 593 (citation omitted). We reach the same conclusion here.

Without abandoning his argument that the trial court's restriction of the *voir dire* violated his Sixth Amendment right to trial by an impartial jury, Matthews maintains primarily that we should apply the "non-constitutional standard of fairness," developed by appellate courts in exercising their "supervisory power over the administration of criminal justice," of which we spoke in *Jenkins v. United States,* 541 A.2d 1269, 1273 (D.C.1988). Instead of requiring a "significant likelihood" of juror prejudice, which is the constitutional standard utilized by the Supreme Court in such cases as *Ristaino v. Ross, supra,* 424 U.S. at 598, 96 S.Ct. at 1022, we concluded in *Jenkins* that the conviction must be reversed because there was a "reasonable possibility" that juror bias might have influenced the verdict. This non-constitutional standard was first articulated by the Supreme Court in *Rosales–Lopez v. United States,* 451 U.S. 182, 192, 101 S.Ct. 1629, 1636, 68 L.Ed.2d 22 (1981). In that case the Court, exercising its "supervisory power over the federal courts," held that a trial court must make an inquiry into the possible racial prejudice of the venire members if there is "a reasonable possibility that racial prejudice would influence the jury." *Id.* at 192, 101 S.Ct. at 1636 (citation and internal quotation marks omitted).

We find *Jenkins* inapposite here for two reasons. First, as we noted in *Jenkins,* the non-constitutional "reasonable possibility" standard was developed by the Supreme Court in cases involving possible racial or ethnic prejudice among the prospective jurors, and all the Supreme Court cases applying it have focused on that issue, which is not presented here. Second,

---

1. *See Boone v. United States,* 483 A.2d 1135, 1138 n. 6 (D.C.1984) (en banc), citing *United States v. Ridley,* 134 U.S.App.D.C. 79, 412 F.2d 1126 (1969). The trial court limited the *Ridley* question to drug-related crimes occurring within the past five years. In *Williams v. United States,* 521 A.2d 663, 665 (D.C.1987), we held that the trial court had not abused its discretion by limiting the *Ridley* question to crimes "similar to those charged in the indictment." We have never expressly approved or disapproved a time limitation on a *Ridley* question, but we see no need to decide the point here, for we are satisfied that the *voir dire* as a whole, including the five-year *Ridley* question, was sufficient to uncover any potential juror bias.

we limited our holding in *Jenkins* to cases in which there might be bias "as to police testimony," *i.e.*, a disposition to give more weight to the testimony of a police officer than that of another witness, and the government's case depended entirely on police testimony. We specifically did not "deal with questions about how far this particular standard extends into other contexts." *Jenkins, supra,* 541 A.2d at 1273 n. 1. We noted also that the failure to ask a *voir dire* question about police testimony "is not always reversible error," and that reversal would depend on the impact which such testimony would likely have on the jury "and what part such testimony played in the case as a whole." *Id.* at 1275 (cita-

tion and internal quotation marks omitted). Given the narrow holding of *Jenkins,* and mindful that our supervisory power "must be sparingly exercised," *see Lopez v. United States,* 373 U.S. 427, 440, 83 S.Ct. 1381, 1388, 10 L.Ed.2d 462 (1963),[2] we decline to extend *Jenkins* to a case such as the one at bar.

Appellant's conviction is therefore *Affirmed.*

---

**2.** *See also Bank of Nova Scotia v. United States,* 487 U.S. 250, 254–257, 108 S.Ct. 2369, 2373–2374, 101 L.Ed.2d 228 (1988); *United States v.* *Hasting,* 461 U.S. 499, 505–507, 103 S.Ct. 1974, 1978–1980, 76 L.Ed.2d 96 (1983).