David T. **WATKINS**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 00–CF–540.

District of Columbia Court of Appeals.

Argued Nov. 18, 2003.
Decided April 8, 2004.

---

Andrea Roth, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for appellant.

Suzanne C. Nyland, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Elizabeth Trosman, Michael Ambrosino, and Kenneth Behle, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and SCHWELB and WASHINGTON, Associate Judges.

SCHWELB, Associate Judge:

A jury convicted David T. Watkins of one count of first degree murder while armed,[1] one count of assault with intent to kill while armed (AWIKWA),[2] and related weapons offenses. On appeal, Watkins presents several claims of error, only one of which—a novel issue under *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), the *Jencks* Act, 18 U.S.C. §§ 3500 *et seq.,* and Super. Ct. Crim. R. 26.2 (implementing the *Jencks* Act), requires extended discussion. We conclude, contrary to the government's position, that Watkins has preserved this issue, both in the trial court and on appeal. On the merits, however, we discern no reversible error, and we therefore affirm Watkins' convictions.

## I.

### FACTUAL BACKGROUND

On December 23, 1997, Watkins allegedly shot two men with a pistol, killing Duan Dabney and seriously wounding Kevin Bowen. The shootings allegedly involved rival gangs of drug dealers, and the prosecution's theory was that Watkins shot Dabney and Bowen in reprisal for the shooting and tragic blinding of Conrad Perry several months earlier, allegedly by a member of Dabney's gang.[3]

1. D.C.Code §§ 22–2401, –3202 (1981), since recodified at D.C.Code §§ 22–2102, –4902 (2001).

2. D.C.Code §§ 22–501, –3202 (1981), since recodified at D.C.Code §§ 22–304, –4902 (2001).

3. The blinding of Perry is the subject of a separate appeal in *Quarteze Moore v. United*

Bowen died in an unrelated incident before Watkins' case came to trial. At trial, the prosecution introduced evidence of an "excited utterance" made by Bowen to his girlfriend shortly after Bowen was shot. In that "utterance" Bowen allegedly identified Watkins as his assailant, stating: "Dave shot me!"

Because he was no longer alive, Bowen was not available for cross-examination by defense counsel. Watkins' attorney, however, requested that the defense be provided with Bowen's grand jury testimony for impeachment purposes. The trial judge declined the defense request. The principal question on appeal is whether, following the admission of Bowen's "excited utterance," and notwithstanding the fact that Bowen did not testify, the prosecution was required to make Bowen's grand jury testimony available to counsel for Watkins under the *Jencks* Act or pursuant to this court's supervisory authority over the Superior Court.

## II.

## LEGAL ANALYSIS

A. *Preservation of the issue on appeal.*

█ Preliminarily, the government contends that the *Jencks* issue is not properly before us. Counsel for Watkins did not identify it as one of her three questions presented in Watkins' opening brief on appeal, and instead addressed it only in a single footnote. We conclude that there has been no waiver.

The footnote in Watkins' brief, consisting of twenty-five single-spaced lines, and citing authority, succinctly but effectively

explained Watkins' theory under the *Jencks* decision and the *Jencks* statute. There can therefore be no question that, upon receipt of the brief, the government had been apprised of the essence of the defense claim. Indeed, in its own initial brief, the government argued the substance of its position on the issue in a responsive footnote which consisted of twenty-two single-spaced lines, and which also cited supporting authority.

█ In any event, following oral argument, this court entered an order directing the parties to file simultaneous supplemental submissions elaborating upon their arguments with respect to the *Jencks* issue and permitting them to file responses to each other's submissions. Both parties have taken advantage of the court's direction, and the point has now been fully briefed, so that each side has had a full opportunity to have its say on the issue. This is therefore not a case like *In re Shearin,* 764 A.2d 774 (D.C.2000), cited by the government, in which "the failure to raise an issue in [one party's] brief prevent[ed] the opposing party from briefing the issue, and prevent[ed] both this court and opposing counsel from preparing for its consideration in oral argument." [4] *Id.* at 778. This court, like most courts, adheres to a "strong presumption favoring adjudication of the merits ...," *Lester v. District of Columbia,* 806 A.2d 206, 208 (D.C.2002), particularly where, as here, the liberty of the citizen is at issue. We are satisfied that, in light of the extensive briefing, the government has not been prejudiced, and Watkins' *Jencks* claim should therefore be decided on its merits.

---

*States,* No. 01–CF–673, argued December 15, 2003.

4. It is true, as the government claims, that the limited initial briefing of the *Jencks* issue necessarily affected the manner in which that

issue was discussed at oral argument. If the court had been of the opinion that further oral argument was necessary, however—and the court is not—then additional oral argument could have been scheduled.

B. *The government's contention that the "plain error" standard applies.*

■ In the trial court, Watkins' attorney argued that "it would be unfair for Kevin Bowen's statements to come in and for us not to have any basis to challenge them." Counsel claimed that the transcript of Bowen's grand jury testimony should be produced pursuant to *Jencks* and Super. Ct.Crim. R. 16, and then added:

> [E]ven apart from a *Jencks* argument, we are saying that it is material to our preparation and presentation. And given the unusual circumstances, just out of fundamental fairness and opportunity to try to seek the truth in this, that is something that should rightly be turned over to the defense.

In the relevant footnote to his opening brief on appeal, Watkins argued that "[i]n *Jencks*, ..., the Supreme Court held—*pursuant to its power of administration over the federal courts in the absence of specific legislation*—that justice requires that the defense be entitled to inspect prior statements in the government's possession of testifying government witnesses .... 353 U.S. at 668–69, 77 S.Ct. 1007." (Emphasis added.) The italicized language was obviously an allusion to the Supreme Court's supervisory authority over the United States district courts. In his reply brief, Watkins asked that this court exercise its "inherent supervisory power over the Superior Court in criminal justice matters and over the grand jury," and order the disclosure of Bowen's grand jury testimony. In his supplemental submissions, Watkins has again relied upon this court's supervisory authority.

■ The government now claims that because Watkins did not explicitly allude in the trial court to this court's supervisory power, the trial judge's ruling should be reviewed only for plain error. We are not at all persuaded by the government's argument. Watkins' fundamental claim—that basic fairness and *Jencks* required disclosure to defense counsel of Bowen's grand jury testimony—was clearly and forcefully asserted by his attorney in the trial court. "Once a ... claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments below." *Yee v. Escondido,* 503 U.S. 519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992); *see also Benn v. United States,* 801 A.2d 132, 140 n. 7 (D.C. 2002); *West v. United States,* 710 A.2d 866, 868 n. 3 (D.C.1998). To impose the most exacting standard of review simply because the defendant's attorney did not explicitly refer *in the trial court* to *this* court's supervisory power, would, in our view, be altogether unreasonable, especially when supervisory authority is allocated to this court (as the highest court in this jurisdiction), and the trial judge was powerless to exercise it.

C. *The merits.*

■ The government's obligation to provide witness statements to the defense is governed by Rule 26.2(a) of the Superior Court's Rules of Criminal Procedure, which reads as follows:

> *Motion for production.* After a witness other than the defendant *has testified on direct examination,* the [c]ourt, on motion of a party who did not call the witness, shall order the prosecutor or the defendant and the defendant's attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.

(Emphasis added.) Rule 26.2 "implements the *Jencks* Act in the District of Columbia, and it contains essentially the same provi-

sions." *Hilliard v. United States*, 638 A.2d 698, 703 (D.C.1994) (citation omitted). In the present case, Bowen did not testify on direct examination, and the terms of Rule 26.2(a) are therefore inapplicable.[5]

Watkins argues that it makes little sense to require the government to provide the defense with prior statements of a testifying witness, but not to impose such a requirement vis-a-vis a declarant whose hearsay statement has been admitted and who is not subject to cross-examination. There may be some merit in Watkins' position as a matter of legislative (or rule-making) policy. Rule 806 of the Federal Rules of Evidence provides in pertinent part:

> When a hearsay statement ... has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain.

The Advisory Committee that proposed Federal Rule 806 noted that hearsay declarants are, in essence, witnesses, and should be treated as such for credibility purposes: "The declarant of a hearsay statement which is admitted in evidence is in effect a witness. His credibility should in fairness be subject to impeachment and support as though he had in fact testified." FED. R. EVID. 806 Advisory Committee Notes. The Rule follows logically from *Carver v. United States*, 164 U.S. 694, 17 S.Ct. 228, 41 L.Ed. 602 (1897), in which the Supreme Court recognized the common law right of the defense to impeach a hearsay declarant's dying declaration with any inconsistent statements that the declarant may have made. As the Court noted, even hearsay statements admitted under reliability-based exceptions should be subject to impeachment:

> A dying declaration by no means imports absolute verity. The history of criminal trials is replete with instances where witnesses, even in the agonies of death, have[,] through malice, misapprehension, or weakness of mind[,] made declarations that were inconsistent with the actual facts; and it would be a great hardship to the defendant, who is deprived of the benefit of a cross-examination, to hold that he could not explain them.... They may be contradicted in the same manner as other testimony ....

*Id.* at 697, 17 S.Ct. 228.

The foregoing discussion in *Carver* is potentially relevant to Watkins' case. Here, the government introduced Bowen's excited utterances into evidence, but refused to disclose Bowen's grand jury testimony to the defense, and the jury was never apprised of it. That testimony might, at least theoretically, have shown that Bowen spoke with "misapprehension," "weakness of mind," or otherwise with less than "absolute verity," *id.*, and might therefore have been useable to impeach Bowen. Assuming that this court would follow the reasoning of *Carver* and of FEDERAL RULES OF EVIDENCE 806, Watkins would be entitled to introduce Bowen's grand jury testimony into evidence if he had it, and there is arguably a measure of unfairness in precluding Wat-

---

**5.** Rule 16(a)(2) of the Superior Court's Rules of Criminal Procedure states that Rule 16 does not "authorize the discovery or inspection of statements made by government witnesses or prospective government witnesses except as provided in [the *Jencks* Act]."

kins from presenting that prior testimony to the jury by denying him access to it.

We are confronted, however, with the unequivocal requirement in Rule 26.2(a) that if a declarant's prior statement is to be provided to the defense, that declarant must have testified as a witness on direct examination. The *Jencks* Act represents a compromise between the defendant's need for a witness' prior statements for impeachment purposes and the interests of the government. *United States v. Williams–Davis,* 319 U.S.App. D.C. 267, 290, 90 F.3d 490, 513 (1996).[6] "In balancing a criminal defendant's need for such statements against legitimate state interests, Congress provided for discovery of witness statements only *after* the witness has testified [on direct examination in the trial of the case]. This congressional determination is not to be disregarded by the courts." *United States v. Tarantino,* 269 U.S.App. D.C. 398, 428, 846 F.2d 1384, 1414 (emphasis in original), *cert. denied,* 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988). "The Act supplies the only avenue to the materials it encompasses, and statements of a government witness made to an agent of the [g]overnment which cannot be produced under the terms of [the Act] . . . cannot be produced at all." *Id.* (citations omitted).

Watkins contends that a rule requiring the prosecution to provide the defense with prior statements of hearsay declarants whose declarations have been admitted under an exception to the hearsay rule, as well as the prior statements of declarants who have testified, would be more reasonable and more fair than a rule which treats the two situations differently. His point arguably is not without logical appeal. But as we stated in *1137 19th St. Assocs. v. District of Columbia,* 769 A.2d 155 (D.C.2001),

> we cannot rewrite the statute to make it more "reasonable." *Cf. Iselin v. United States,* 270 U.S. 245, 250–51, 46 S.Ct. 248, 70 L.Ed. 566 (1926) (Brandeis, J.) ("To supply omissions [in statutory language] transcends the judicial function.").

*Id.* at 168 (brackets omitted); *see also 1841 Columbia Rd. Tenants Ass'n v. District of Columbia Rental Hous. Comm'n,* 575 A.2d 306, 308 (D.C.1990) (same). As Chief Justice Burger wrote in his concurring opinion in *Bifulco v. United States,* 447 U.S. 381, 402, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980),

> [o]ur duty, to paraphrase Mr. Justice Holmes in a conversation with Judge Learned Hand, is not to do justice but to apply the law and hope that justice is done.[7]

---

**6.** It should be noted, however, that the interests of the government as described in *Williams–Davis*—concerns regarding witness intimidation, subornation of perjury, and other threats to the integrity of the trial process—have little or no bearing on the situation before us. The court in *Williams–Davis* explained:

> The fear is that if witness statements were disclosed before their testimony, witnesses could be threatened or bribed to change their stories and denounce their previous statements.

319 U.S.App. D.C. at 290, 90 F.3d at 513. In this case, Bowen was dead, and Watkins'

counsel requested that Bowen's grand jury testimony or other prior statements be disclosed to the defense only *after* the admission of Bowen's excited utterance.

**7.** Any perceived unfairness, however, is less than overwhelming, for

> our hewing to the standard meaning of [the *Jencks* Act] by no means leaves the defendant bereft of means for discovering a declarant's statements to the government. If a declarant contradicted himself on a key point, then *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), would likely require disclosure.

■■ We also conclude that Watkins is not entitled to reversal of his convictions under a "supervisory authority" theory. The supervisory power does not provide courts with a "roving commission" to right wrongs, *United States v. Jacobs*, 547 F.2d 772, 777 (2d Cir.1976), and the Supreme Court has emphasized that it must be applied with caution. *See, e.g., United States v. Payner*, 447 U.S. 727, 735, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980). This court, too, has been "mindful that our supervisory power must be sparingly exercised." *Matthews v. United States*, 599 A.2d 1389, 1391 (D.C.1991) (citations and internal quotation marks omitted). "If restraint is not exercised, then a power not dependent on any provision in the Constitution or in applicable statutes can become an open-ended vehicle for converting the views of individual judges into the law of the jurisdiction." *Boyd v. United States*, 586 A.2d 670, 683 (D.C.1991) (dissenting opinion).

■ Watkins points out that *Jencks* was decided pursuant to the Supreme Court's supervisory power, and that this court should therefore exercise its own supervisory authority to extend *Jencks* to the kind of situation now before us. The issue now confronting this court, however, is materially different from the question that the Supreme Court faced in *Jencks*. Prior to the *Jencks* decision, Congress had not enacted legislation identifying the circumstances under which the prosecution must provide the defense with prior statements of actual or potential government witnesses. Now, however, Congress has passed the *Jencks* Act, and that Act has been effectively made a part of the Superior Court's Criminal Rules. Watkins is asking us to expand the government's disclosure obligations beyond those imposed by the *Jencks* Act and Rule 26.2(a). This is not an appropriate exercise of supervisory authority, for "[e]ven a sensible and efficient use of the supervisory power ... is invalid if it conflicts with constitutional or statutory provisions." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) (citation omitted).

We do not suggest that Watkins' arguments are frivolous or implausible; they are not. Nevertheless, in our view, the change in the law which Watkins advocates must come from remedial legislation or from an appropriate revision of Rule 26.2(a). For this court to ordain the result requested by Watkins would contravene fundamental notions of judicial restraint which we must surely respect, and to which all courts have an obligation to adhere.[8]

### D. *Watkins' other contentions.*

Watkins' remaining contentions can be disposed of briefly:

First, Watkins contends that in reviewing Bowen's grand jury testimony to determine if any part of it was exculpatory and should have been provided to the defense pursuant to *Brady*, the trial judge

---

*Williams–Davis,* 319 U.S.App. D.C. at 290, 90 F.3d at 513. In this case, the trial judge reviewed Bowen's grand jury testimony *in camera* and found that it contained no *Brady* material. At Watkins' suggestion, this court has likewise examined Bowen's testimony and discerned nothing exculpatory therein.

8. In *Crawford v. Washington,* 541 U.S. ——, 124 S.Ct. 1354, —— L.Ed.2d —— (2004), decided while this appeal was pending, the Supreme Court clarified the scope of a criminal defendant's right under the Sixth Amendment to confront and cross-examine witnesses against him (or her) and reemphasized the significance of that right. The *Crawford* decision does not, however, address the prosecution's disclosure obligations under *Jencks,* and we conclude that it does not affect the appropriate disposition of this appeal.

failed to include in his inquiry the question whether the testimony tended to negate the government's claim that Bowen's identification of Watkins as his assailant was admissible as an excited utterance. Watkins states in his reply brief that this court should either conduct its own review of Bowen's grand jury testimony or remand the case to the trial judge so that he may inspect the testimony under what Watkins describes as the "correct legal standard." Assuming, *arguendo*, both that Watkins preserved this issue and that the trial judge had the obligation to consider the "excited utterance" issue as part of his *Brady* inquiry—and each of these assumptions is dubious to say the least—we have examined the grand jury testimony and conclude that it adds nothing substantial to the record. Bowen testified that after he had been shot, he handed his girlfriend drugs and money from his pocket because he did not want these items found on him. This conduct does suggest at least some measure of reflection, but the girlfriend testified at trial that Bowen had removed the drugs and money from his pocket, and Bowen's motive for doing so was obvious even without the grand jury testimony.

■ Watkins next argues that the trial judge abused his discretion by replacing a juror with an alternate, where, while the case was still on trial, the juror had been approached at night at a liquor store by a stranger who stated that he knew that the juror was on the jury. There was testimony at the trial that a potential witness had been beaten, threatened, and warned not to testify against Watkins. The trial judge might reasonably have apprehended that if the juror who was approached by the stranger later reflected on the testimony regarding the beating, or if he told other jurors about the liquor store incident, the spectre of intimidation might intrude upon the jury's deliberations. There was no claim or evidence that the alternate who replaced the juror was biased or unqualified to serve. Under these circumstances, Watkins' claim is foreclosed by our recent decision in *Thomas v. United States*, 824 A.2d 26, 31 (D.C.2003) (per curiam).

■ Finally, Watkins contends that the trial judge plainly erred by instructing the jury that there is no death penalty in the District of Columbia. Watkins did not object to the instruction. "No party may assign as error any position of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." Super. Ct. Crim. R. 30. Moreover, the trial judge instructed the jury that "it is the responsibility of the court to impose an appropriate sentence, and you are not allowed to consider what, if any, sentence might be imposed." The jury is presumed to follow the instructions of the court. *Hairston v. United States*, 497 A.2d 1097, 1102 (D.C. 1985). This is a crucial assumption, *Tennessee v. Street*, 471 U.S. 409, 415, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985), for our theory of trial depends on the jury's ability to do so. *Opper v. United States*, 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed. 101 (1954); *Thompson v. United States*, 546 A.2d 414, 425 (D.C.1988). We conclude that there was no plain error. *See, e.g., Jones v. United States*, 813 A.2d 220, 223 (D.C. 2002).

### III.

### CONCLUSION

For the foregoing reasons, Watkins' convictions are

*Affirmed.*