*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CM-1165

LLOYD D. WILLIAMS, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(DVM-1017-18)

(Hon. Judith A. Smith, Trial Judge)

(Submitted February 14, 2020                    Decided July 9, 2020)

*Thomas Engle* and *Sharon L. Burka* were on the brief for appellant.

*Jessie K. Liu*, United States Attorney at the time the brief was filed, and *Katherine M. Kelly*, *Eliot A. Folsom*, *John P. Mannarino*, and *Elizabeth Trosman*, Assistant United States Attorneys, were on the brief for appellee.

Before GLICKMAN and THOMPSON, *Associate Judges*, and STEADMAN, *Senior Judge*.

GLICKMAN, *Associate Judge*:  In this appeal, Mr. Williams asks us to order

the trial court to re-sentence him for his criminal violation of a civil protection order

(CPO).[1]  His sole claim is that the court erred in declining to compel the United States to produce Jencks Act statements of the complainant after she provided a victim impact statement at his sentencing.  We hold that a victim who merely exercises her statutory right to appear and provide an impact statement at sentencing is not a government witness whose prior statements are subject to production by the United States under the Jencks Act and the Criminal Rules implementing it.  Accordingly, we affirm the trial court's ruling and appellant's sentence.

**I.**

Appellant pleaded guilty to having violated a CPO that directed him to have no contact with the complainant, Ms. Patricia Brokenburrow.  The court scheduled appellant's sentencing to be held on October 12, 2018.  He did not show up for his sentencing on time, but his counsel and all other parties were present and ready to proceed when the case was called.  Ms. Brokenburrow was there to provide a victim impact statement in person.

Ms. Brokenburrow was, at that time, critically ill, using an oxygen tank to breathe, and assisted by a health aide.  The prosecutor requested that she be permitted

---

[1]  D.C. Code §§ 16-1004(d), -1005(g) (2012 Repl. & 2020 Supp.).

to provide her victim impact statement in appellant's absence so that she would not need to return to court at a later date. Appellant's counsel agreed to this request, saying that appellant was "not really prejudiced" because he could obtain a transcript of the statement and it could have been submitted in writing rather than orally. Because she was having difficulty breathing, Ms. Brokenburrow requested to play an audio recording of her statement. It was played into the court microphone so that it could be transcribed, and the court ordered the government to undertake to provide a copy of the recording to appellant's counsel.

After the statement was played, appellant's counsel asked that the government produce all Jencks materials for the complainant, "given that she has made a victim impact statement." The prosecutor objected, arguing that the Jencks Act applies at sentencing only to the extent that a witness testifies for the government pursuant to Criminal Rule 32(c)(2).[2] The court reserved ruling and permitted the parties to brief the issue.

Moments later, appellant arrived. His appearance prompted Ms. Brokenburrow to request permission to deliver her impact statement again, directly

---

[2] Super. Ct. Crim. R. 32(c)(2).

from her own lips this time rather than via her recording. The court acceded to this request, and Ms. Brokenburrow spoke. She began by asking for an apology from appellant. After a brief interruption for her health aide to step aside, Ms. Brokenburrow's statement continued as follows:

> MS. BROKENBURROW: The way you were on the day when you were checking all the time when we were in the house so when you get high and stuff. I just want you to say you're sorry, which you did. Then, you tell me that you wish I die. That's a horrible thing to say to somebody when you got cancer.
>
> THE COURT: Thank you very much, ma'am. Is there anything else you'd like to add?
>
> THE PROSECUTOR: Is there anything else you want to tell the judge about what kind of sentence do you think he should get like if he needs drug treatment, you can tell the judge that?[3]
>
> MS. BROKENBURROW: Yes. That means jail time.
>
> THE COURT: I'm sorry, say that again.
>
> MS. BROKENBURROW: Let him get time jail time.
>
> THE PROSECUTOR: You want him to get jail time?
>
> MS. BROKENBURROW: Jail time, yes.

---

[3] This question did not appear in the transcript prepared by the court reporter, but after appellant argued in his motion to compel Jencks material that the prosecutor had "prompted" Ms. Brokenburrow to tell the court whether she wanted appellant to get jail time, the judge reviewed the audio recording of the hearing and found that the prosecutor asked the above question.

After Ms. Brokenburrow finished speaking, the court heard from the parties. The prosecutor asked the court to impose a sentence of incarceration for 180 days, suspended in favor of one year of supervised probation. Appellant's counsel requested a 30-day suspended sentence, but otherwise agreed with the government's request. Appellant then spoke on his own behalf. In the ensuing colloquy, the judge expressed doubt that appellant was a good candidate for probation; she cited his non-compliance with some of his release conditions, including his failure to drug-test consistently, and his late arrival to court for his sentencing. Ordering appellant to report for drug testing that afternoon, the judge continued the sentencing to await the parties' written submissions on appellant's Jencks motion.

After receiving those submissions, the court resumed the sentencing hearing on October 29, 2018. Addressing the Jencks issue, the judge reported she had listened to the recording made of Ms. Brokenburrow's in-court victim impact statement. The judge said she had "confirm[ed] . . . that the prosecutor at that time . . . says something relatively quietly is there anything else you want to tell the judge about what kind of sentence do you think he should get, like if he needs drug treatment, you can tell the judge that." Aside from that question, the judge found, any questions asked of Ms. Brokenburrow were for the purpose of clarifying what she was saying, as "it was difficult to hear her" because of her weakened condition.

The judge further found that "the information elicited [from Ms. Brokenburrow] was really not equivalent to factual testimony;" rather, she was providing a view of "how the case impacted her, and what would she like to see happen." Concluding that Ms. Brokenburrow's victim impact statement was not witness testimony at sentencing, the judge denied appellant's motion to compel the government to turn over Jencks material. She proceeded to sentence appellant to 30 days of incarceration, with credit for time served.

**II.**

Appellant argues that (1) Ms. Brokenburrow's victim impact statement was the equivalent of "testimony" of a government witness, triggering the government's obligations under the Jencks Act; and that (2) even if a victim's in-court impact statement by itself does not constitute witness testimony, the prosecutor's questioning of Ms. Brokenburrow transformed her into a government witness and thereby entitled the defense to insist on compliance with the Jencks Act. We disagree with both contentions. We conclude that a victim impact statement at sentencing is not the equivalent of a government witness's testimony for purposes of the Jencks Act, and that the prosecutor's questioning of Ms. Brokenburrow did not make her a government witness.

"The purpose of the Jencks Act is to aid in the search for truth by permitting [defense] access to prior statements of government witnesses for possible impeachment"[4]—i.e., for use in cross-examining the witnesses. To that end, the Jencks Act states that

> [a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.[5]

The procedural implementation of the Jencks Act in Superior Court is governed by Superior Court Criminal Rule 26.2.[6] Rule 26.2 expands the coverage of the Jencks Act to defense witnesses. It provides that after a witness called by the government *or* the defense has testified on direct examination, the court may order the party that called the witness to produce relevant statements of that witness in its possession. "If the party who called the witness disobeys an order to produce or deliver a statement, the court must strike the witness's testimony from the record."[7] Trial

---

[4] *Williams v. United States*, 757 A.2d 100, 107 (D.C. 2000).

[5] 18 U.S.C. § 3500(b) (2018).

[6] *Rahman v. United States*, 208 A.3d 734, 739 (D.C. 2019).

[7] Super. Ct. Crim. R. 26.2(e).

courts are afforded considerable discretion in ruling on issues arising under the Jencks Act and Rule 26.2, but the proper interpretation of those provisions is a legal question, as to which our review is *de novo*.[8]

Criminal Rule 26.2(g) provides that the disclosure obligations imposed by the Jencks Act and the Rule are applicable in sentencing proceedings "to the extent specified in . . . [Criminal] Rule 32(c)."[9]  In pertinent part, Rule 32(c) provides that "[t]he court may permit the parties to introduce evidence" in a sentencing proceeding, and that "[i]f a witness testifies at sentencing, Rule 26.2(a)-(d) and (f) applies."[10]  "If a party fails to comply with a Rule 26.2 order to produce a witness's statement, the court must not consider that witness's testimony."[11]

Thus, the statement production requirements of the Jencks Act and Criminal Rules 26.2 and 32(c)(2) apply to the United States at sentencing when, and only

---

[8]  *See Rahman*, 208 A.3d at 738; *Lazo v. United States*, 54 A.3d 1221, 1231 (D.C. 2012); *see also In re Greenspan*, 910 A.2d 324, 335 (D.C. 2006) ("We review issues of statutory and regulatory construction . . . *de novo*.").

[9]  Super. Ct. Crim. R. 26.2(g)(2).

[10]  Super Ct. Crim. R. 32(c)(2).

[11]  *Id.* Rule 32(c)(2) is worded slightly differently from Rule 26.2(e), but the difference is immaterial in the present context.

when, "a witness called by the United States" has testified on direct examination at the sentencing hearing.[12]  This reflects the purpose of the Jencks Act—to facilitate cross-examination of prosecution witnesses.

A crime victim who provides an impact statement at a defendant's sentencing is not a witness called by the United States to testify.  Rather, under the Crime Victims' Rights Act of 2000,[13] crime victims have an independent statutory "right to be present" and "to make a statement" at the defendant's sentencing hearing, as well as "the right to submit, prior to the imposition of sentence," a "victim impact statement containing information concerning any emotional, psychological, financial, or physical harm done to or loss suffered by the victim."[14]  Accordingly, the Criminal Rules address victims' rights to be present and speak at sentencing not

---

[12]  18. U.S.C. § 3500(b); *see also Watkins v. United States*, 846 A.2d 293, 299 (D.C. 2004) (noting the "unequivocal requirement in Rule 26.2(a) that if a declarant's prior statement is to be provided to the defense, that declarant must have testified as a witness on direct examination"); *United States v. Tarantino*, 846 F.2d 1384, 1414 (D.C. Cir. 1988) ("In balancing a criminal defendant's need for [witness] statements against legitimate state interests, Congress provided for discovery of statements only *after* the witness has testified, out of concern for witness intimidation, subornation of perjury, and other threats to the integrity of the trial process."  (Emphasis in original.)).

[13]  D.C. Code § 23-1901 *et seq.* (2012 Repl. & 2020 Supp.).

[14]  D.C. Code §§ 23-1904(a), (b), (e).

in part (c)(2) of Rule 32, the part concerning witnesses and the Jencks Act, but in part (c)(4). That part of the Rule identifies two categories of persons—the parties and the defendant's victims—who shall have the "opportunity to speak" and address the court about the sentence to be imposed.[15] As to persons in the second category, Rule 32(c)(4)(B) states that "the court must address any . . . victim who is present at sentencing and must permit the victim to speak or submit any information about the sentence." The government is assigned certain duties to facilitate the exercise of these rights,[16] but when a victim chooses to appear and speak at sentencing, she is acting on her own and not as the government's witness.

Crime victims who exercise their rights to address the court at sentencing do not "testify" like witnesses either. Rule 32(c)(4) provides crime victims with a non-testimonial "opportunity to speak" about the sentence comparable to the opportunity to speak afforded by the same part of the Rule to the parties' attorneys and the

---

[15] *See* Rule 32(c)(4)(A), (B) (distinguishing "a Party" from "a Victim").

[16] *See* Super. Ct. Crim. R. 32(a)(2)(B), (D) (requiring the government to "make reasonable efforts to notify" crime victims of their rights and to "promptly forward any victim impact statement" either to the Court Services and Offender Supervision Agency or "to the court, and . . . serve it on the defendant's attorney").

defendant.[17] Like them, the victim giving an impact statement is not placed under oath and is not subjected to direct and cross examination (and hence is not exposed to impeachment with prior statements, the purpose of Jencks); nor is her statement elicited or probed by the opposing parties in order to prove or disprove material facts in dispute.[18] The statement is permitted and intended to have the character not of testimony, but of advocacy.[19]

---

[17] *See* Super. Ct. Crim. R. 32(c)(4)(A).

[18] We note that appellant has not claimed that Ms. Brokenburrow made any factual misrepresentations in her victim impact statement; and we do not suggest that a defendant may not challenge materially false assertions contained in such statements. "'Misinformation or misunderstanding that is materially untrue regarding a prior criminal record, or material false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process.'" *Bradley v. District of Columbia*, 107 A.3d 586, 589 (D.C. 2015) (quoting *United States v. Hamid*, 531 A.2d 628, 644 (D.C. 1987)). The existence of a factual dispute at sentencing may, as Rule 32(c)(2) envisions, entitle a party to present evidence at the hearing, but the government's Jencks obligation to produce a victim's prior statements to the defense at sentencing nonetheless depends on whether the victim is a witness for the government, *see Watkins*, 846 A.2d at 299, and not on whether the court might rely on information in a victim impact statement.

[19] *See, e.g.*, *Testimony*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "testimony" as "evidence that a competent witness under oath or affirmation gives at trial or in an affidavit or deposition"); *see also Tyler v. United States*, 975 A.2d 848, 854 (D.C. 2009) (For purposes of a defendant's Sixth Amendment right to confrontation, "testimony" is "typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact.").

Because the government did not call Ms. Brokenburrow to testify as a witness for the prosecution at appellant's sentencing hearing, her mere appearance and statement were not enough to render the Jencks Act and Rule 26.2 applicable and require the United States to produce any of her statements in its possession.[20]

Furthermore, the prosecutor's questioning of Ms. Brokenburrow did not transform her into a government witness. The trial court found, and we agree, that the minimal questioning was merely an effort to facilitate the participation in the sentencing process of a victim with a critical, debilitating illness and to ensure that she was fully heard by the court regarding her views about an appropriate sentence. It was entirely consistent with the requirements that a crime victim be permitted to speak on that subject and that the court consider what she has to say.[21]

---

[20] Thus, appellant's case is distinguishable from the cases he cites in which the court did require the government to disclose Jencks material at sentencing. *See United States v. Rosa*, 891 F.2d 1074, 1079 (3d Cir. 1989); *United States v. Fatico*, 458 F. Supp. 388, 400 (E.D.N.Y. 1978). In those cases, the government called co-defendants or informants as witnesses at the sentencings of defendants who had pleaded guilty in order to establish critical, disputed facts about the defendants' criminal activities that had not been proved at trial.

[21] Appellant argues that the prosecutor was purposefully attempting to elicit from Ms. Brokenburrow a request that appellant receive jail time. We do not see that this would make a difference even if the record supported the argument; but the record does not support it. The prosecutor did not suggest the possibility of jail to Ms. Brokenburrow (and the prosecutor did not request a jail sentence either).

**III.**

For the foregoing reasons, we conclude that the trial court did not err in declining to compel the United States to produce prior statements of Ms. Brokenburrow as Jencks material after she made her victim impact statement at appellant's sentencing.  Appellant therefore is not entitled to relief from his sentence or a remand for further sentencing proceedings.  We affirm his conviction and the judgment of the Superior Court.

*So ordered.*