**UNITED STATES, Appellant,**

v.

**Terry WHITE, Appellee.**

**No. 96–CO–867.**

District of Columbia Court of Appeals.

Argued Dec. 18, 1996.

Decided Jan. 30, 1997.

---

Andrew C. Phelan, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher, Thomas J. Tourish, Jr., and Margaret M. Lawton, Assistant United States Attorneys, were on the brief, for appellant.

Kathleen Sutherland, with whom Valentine Anyaibe, and Christopher Warnock, were on the brief, for appellee.

Before STEADMAN, KING and RUIZ, Associate Judges.

KING, Associate Judge:

Terry White, a passenger on an interstate bus that had stopped-over in the District of Columbia, was charged with a violation of the drug laws based on the recovery of contraband by police officers after a search of a jacket that was seized from the area next to her. The trial court granted White's motion to suppress the evidence because the government elected to file the criminal charge against White, who the court found had no standing to contest the search, but not against another passenger whom White identified as the owner of the jacket. The government now appeals that ruling pursuant to D.C.Code § 23–104(a)(1) (1989 Repl.). We reverse and remand.

## I.

### A.

On November 5, 1994, Terry White boarded a Greyhound bus in New York City to travel to Richmond, Virginia. White's bus made a stop at the Greyhound station in the District of Columbia, where Detectives Maria Pena and Caswell Fleming from the District of Columbia Metropolitan Police Department ("MPD") Drug Interdiction Unit[1] boarded and began interviewing passengers. Detective Pena was in the back of the bus interviewing a passenger when she noticed White sitting in a nearby seat. White sat next to the window, but slumped over towards the aisle seat with a black leather jacket draped over her like a blanket. At first glance, Pena thought White was asleep, but then Pena noticed White "peeking" to see what was happening on the bus.

After her interview with the other passenger was completed, Pena approached White, identified herself, and asked if she could speak with White. White agreed. When Pena asked White for her ticket, White retrieved it from the black leather jacket that was covering her. White explained that she was from Richmond and was returning there after visiting New York City for a week. Pena asked if White had any luggage; White said no. Pena pointed to two backpacks next to White and asked if they belonged to her; White said yes. Pena then explained the purpose of the interview and asked if White was carrying any guns or drugs in her backpacks; White said no. Pena then asked if she could search White's backpacks; White said yes. After completing this search without finding any drugs or guns, Pena asked if she could search the black leather jacket that White had over her person. White responded by removing the jacket and placing it to her side, away from Pena, saying that it did not belong to her. White then picked up a green jacket, stating it was hers, and that Pena could search it. After searching White's green jacket and finding no contraband, Pena asked White if she knew who owned the black leather jacket that White had put aside. White said that she did not know who owned that jacket. Pena again asked White for permission to search the black jacket, and White responded, "yeah, you can search it but it is not mine." Pena's search of the black jacket revealed a quantity of cocaine and White was then placed under arrest.

White was taken off the bus by Detective Fleming, who informed White of her *Mi-*

---

1. The Drug Interdiction Unit interviews passengers transiting the District of Columbia by train or bus in an effort to intercept illegal drugs from passing into or through the District.

*randa*[2] rights. Fleming asked White if she understood her rights, and White replied, "yes." Fleming then asked White if she would answer some questions without having a lawyer present. White responded, "can I speak to someone" or "somebody," to which Fleming replied, "yes," and said nothing else. Without any further questions from Fleming, White volunteered that she was carrying the drugs for one of the passengers on the bus. Fleming escorted White back onto the bus and White then identified a man in the seat just across from where she had been sitting. Fleming arrested the man, although the government later dismissed the charges against him.

White was taken to a MPD transport car by Pena where she asked White if she understood her rights; White said "yes." Pena asked about the drugs and White explained that she was paid $500 by a man she met in New York who asked her to carry the jacket to Virginia where she was to leave it in a bathroom.[3]

**B.**

White moved pretrial to suppress the seized evidence. After hearing testimony relating the facts set forth above, the trial judge found that White was asleep or resting on the bus when Pena approached her; that White had the leather jacket draped across her person like a blanket; that White was "peeping" at the detectives on the bus; that White was awakened for the interview with Pena; and that White was cooperative. Judge Queen ruled that, although White did not have standing to challenge the search of the jacket, the seized evidence would be suppressed, along with White's statements, on the grounds they were the fruit of an illegal search, because Judge Queen did not agree with the government's decision to prosecute White, but not the jacket's owner. In her ruling, Judge Queen stated in part:

[W]hen the police department met a frustrating factor, that is a person in the presence of the jacket saying it's not mine I can't let you search it, or it's not mine and moving it away upon a request to consent to search, they just made believe she wasn't there and said well, she has no standing, took the jacket and searched it. But then when the individual who owned the jacket was identified, they arrested that individual, and then realizing if we prosecute this man a motion to suppress must be successful, they declined to prosecute the person with standing to suppress, keeping the person without standing to suppress who had been in the presence of the jacket.

I find that duplicitous, protectural [sic] and not just. That simple. There's no law to support what I'm doing, not a scrap. But I'm doing it and I'll let the Court of Appeals tell me that the Government can choose not to prosecute someone with standing to successfully suppress so they can prosecute someone without standing and successfully prosecute them. That's what I ask the Court of Appeals to clarify for me, whether the Government has that kind of discretion. . . .

We answer the trial judge's question, "whether the Government has that kind of discretion," in the affirmative. We hold that the trial judge erred in suppressing the tangible evidence based on the judge's stated belief, without any basis in a statutory or constitutional right of White, that it was "not just" for the government to choose to prosecute her but not the jacket's owner.

**II.**

 In analyzing a ruling by the trial court on a motion to suppress evidence, we review findings of fact for clear error, while reviewing conclusions of law *de novo*. *Holt v. United States*, 675 A.2d 474, 478 (D.C.), *cert. denied*, —— U.S. ——, 117 S.Ct. 176, 136 L.Ed.2d 117 (1996) (citations omitted). Legal conclusions that are contrary to existing law and factual findings unsupported by the

---

**2.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** White was charged with violating D.C.Code 33 § 541(a)(1) (1993 Repl.). "[I]t is unlawful for any person knowingly or intentionally to ... distribute, or possess, with intent to ... distribute, a controlled substance."

evidence will be reversed. *Id.; District of Columbia v. M.E.H.,* 312 A.2d 561, 565 (D.C. 1973) (en banc) (reversal of trial court's motions ruling where trial court ignored controlling precedent).

■ Normally, the judiciary is without authority to question and review the Executive Branch in the exercise of its discretion in deciding whether or not to prosecute a particular case. "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file ... generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) (citation omitted); *accord Price v. United States,* 531 A.2d 984, 987 (D.C.1987); *Community for Creative Non–Violence v. Pierce,* 252 U.S.App.D.C. 37, 39, 786 F.2d 1199, 1201 (1986); *Weisberg v. United States Dep't of Justice,* 160 U.S.App.D.C. 71, 77, 489 F.2d 1195, 1201 (1973) (en banc); *see also United States v. Cox,* 342 F.2d 167, 171 (5th Cir. 1965) (en banc) (citation omitted) ("courts are not to interfere with the free exercise of the discretionary powers of the [prosecuting authority in its] control over criminal prosecutions").

■ Prosecutorial discretion is not unfettered, however, because the selective enforcement of criminal laws is subject to constitutional constraints. *Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985) (citations and quotations omitted). "In particular, the decision to prosecute may not be 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classifica-

tion' ... including the exercise of protected statutory and constitutional rights." *Id.* (citations and quotations omitted). No such statutory or constitutional violations were asserted here. Indeed the trial judge's sole basis for granting the motion was her opinion that the government's decision to prosecute White, but not the owner of the jacket, was, in some unspecified way, "not just." The trial judge erred in granting the motion for that reason because the decision whether or not to prosecute a particular case is, as we have said, one for the prosecutor to make, not the trial judge. *See United States v. Payner,* 447 U.S. 727, 737, 100 S.Ct. 2439, 2447, 65 L.Ed.2d 468 (1980) (reversing grant of motion to suppress where trial court ignored controlling law); *District of Columbia v. M.E.H., supra,* 312 A.2d at 565 (same); *United States v. Hobby,* 275 A.2d 235, 237 (D.C.1971) (trial court lacked authority to suppress seized evidence on the ground that the information was defective because it charged violation of the wrong statute).

Because the trial judge was without authority to grant the motion to suppress for the reason given, the order doing so is hereby reversed and the case remanded for further proceedings.[4]

*Reversed and remanded.*

---

**4.** White argues that she in fact had standing to assert a privacy interest in the jacket and that because she did not voluntarily consent to its being searched, the grant of the motion to suppress should be sustained on that ground. On the other hand, the government contends that the trial judge found there was no standing, that the record supports such a finding, and that we should therefore affirm that part of the trial judge's ruling. There is record support for both White's and the government's contentions, but we decline to decide the standing issue because, although the trial judge ruled that White did not have standing, the judge did not provide either

factual findings or her reasons for so deciding. On remand the trial judge should make the appropriate findings and provide the reasons for any decision made on this point.

On a separate issue, we note that, because she suppressed the seized cocaine, the trial judge did not resolve White's challenge, on *Miranda* grounds, to the admissibility of her post-arrest statements to Detectives Pena and Fleming. Instead, the trial judge ruled that the statements were not admissible because they were the "poisonous fruit of the poisonous tree." The *Miranda* issue can also be addressed by the trial judge upon remand.