716 A.2d 576

STATE OF NEW JERSEY (BARBARA HARRIS), PLAINTIFF,
v. DOUGLAS CABANA, DEFENDANT.

Superior Court of New Jersey
Law Division
Morris County

Decided August 11, 1997.

*Peter N. Gilbreth*, for defendant.

*Michael M. Rubbinaccio*, for the State (Barbara Harris).

BOZONELIS, J.S.C.

Defendant, Douglas Cabana, is charged in Hanover Township with simple assault, *N.J.S.A.* 2C:12–1a(1), by "purposely, knowingly causing bodily injury to Barbara Harris, specifically by hitting her in the face with his right index knuckle three times causing her to jerk backwards." Ms. Harris signed the Summons Complaint together with a Probable Cause Statement which states in part that defendant used "the second knuckle of his right index finger ... the last struck to my chin, forcing my head back in a jerk and causing me to stagger backward." By subsequent certification, complainant adds that "... the impact when struck caused me physical pain".

The Hanover Township Municipal Prosecutor, in consultation with the Morris County Prosecutor, has reviewed the complaint and consented to private counsel prosecuting same. Defendant

does not object and no conflict is presented. *Compare, State v. Storm,* 141 *N.J.* 245, 252–255, 661 *A.*2d 790 (1995).

The defendant now moves before this Court [1] for a dismissal of the prosecution as a de minimus infraction under *N.J.S.A.* 2C:2–11(b) which reads:

> The assignment judge may dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the defendant's conduct:
>
> b. Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction;

For purposes of the motion, the court assumes that the conduct charged actually occurred. *State v. Zarrilli,* 216 *N.J.Super.* 231, 236, 523 *A.*2d 284 (Law Div.1987), *aff'd.* 220 *N.J.Super.* 517, 532 *A.*2d 1131 (App.Div.1987). The question becomes what is the risk of harm to which society is exposed by defendant's conduct. *Id.* at 239, 523 *A.*2d 284. Defendant asserts that his conduct, which technically may establish the commission of a crime, was a trivial matter or did not cause or threaten the result which the criminal statute is designed to prevent. *State v. Brown,* 188 *N.J.Super.* 656, 671, 458 *A.*2d 165 (Law Div.1983), *certif. den.* 101 *N.J.* 280, 501 *A.*2d 944 (1985). In that regard, the court examines not only the nature of defendant's conduct but also the nature of the attendant circumstances. Every surrounding fact is entitled to consideration. *State v. Smith,* 195 *N.J.Super.* 468, 474, 480 *A.*2d 236 (Law Div.1984).

The defendant's conduct and attendant circumstances herein are framed in a political backdrop. Defendant and complainant were opponents and candidates in the June 3, 1997 primary election to be among three Republican party representatives for Morris County Freeholder. At the time, Mr. Cabana, an attorney at law of New Jersey, was an incumbent freeholder and also Mayor of Boonton Township. Ms. Harris herself was a former Mayor of Morris Township and active in Republican politics. Each were

---

[1] The motion was assigned to this court on recusal from the Assignment Judge.

seasoned politicians, familiar with the rigors of political debate. Their respective candidacy and campaign in the Republican primary had divided them into separate competing camps, each aligned with other candidates to fill the three available party freeholder slots.

In this setting, both Mr. Cabana and Ms. Harris were present at a GOP social function at the Marriott in Hanover Township on Saturday, May 31, 1997, the last weekend before primary election day on Tuesday, June 3, 1997. Ms. Harris had circulated a political flier critical of defendant as an elected official. Defendant with the flier in hand initiated a confrontation with Ms. Harris on the dance floor angrily waving the flier at her. During this time, they engaged in heated argument. Further, based on complainant's statements, defendant struck her chin with the knuckle of his right index finger forcing Ms. Harris' head back in a jerk, causing her to stagger backward and experience physical pain.

■ Under our Criminal Code, simple assault as charged herein requires the element of bodily injury, defined in *N.J.S.A.* 2C:11–1(a) as physical pain, illness or any impairment of physical condition. Prior to the Code, at common law, bodily injury was unnecessary. The slightest touching or offensive contact was a battery. *State v. Maier,* 13 *N.J.* 235, 242, 99 *A.*2d 21 (1953). The Code rejected this view for the stricter standard of bodily injury. In explanation, the Criminal Law Revision Commission Commentary to *N.J.S.A.* 2C:12–1 asserts that mere offensive touching is not sufficiently serious to be made criminal. Cannel, *Criminal Code Annotated,* Comment 3 to *N.J.S.A.* 2C: 12–1, (Gann). Not much is required to show bodily injury. *N.B. v. T.B.,* 297 *N.J.Super.* 35, 43, 687 *A.*2d 766 (App.Div.1997). However, that fact does not prevent the threshold consideration of criminal culpability as to whether there was an intentional physical assault upon another versus an offensive touching, non-criminal by its nature.

■ The de minimus statute contemplates that very analysis. There will always be some minimal body sensation which may be classified as "physical pain" associated with an offensive touching

to technically fall within the bodily injury Code definition. Yet this alone does not qualify an intentional offensive touching as an assault. It simply is not sufficiently serious to be so where the contact was incidental to the sequence of events rather than the result of assaultive intent. The nature of the conduct is dependent upon the state of mind of the actor and a fact-sensitive analysis on a case by case basis. Every surrounding fact is considered. *Smith, supra* at 474, 480 *A.2d* 236. Common sense prevails and this court must be the "gatekeeper" in that regard. *See, State v. Hoffman,* 149 *N.J.* 564, 586–587, 695 *A.2d* 236 (1997).

In our collective experiences, for example, we have all observed two workers or friends or a parent and child arguing when one may firmly grab the arm of the other to direct action or emphasize a point. As a result, physical pain may occur, but any "bodily injury" caused is not sufficiently serious to fall within the assault statute. Rather, it is an offensive touching. No other conduct is intended by the actor and there is no risk of harm to which society is exposed by this conduct. *State v. Zarrilli, supra,* at 239, 523 *A.2d* 284.

Applying these principles to the within matter, the surrounding circumstances evidence two experienced politicians engaged in a heated debate initiated by one toward the other over a campaign flier at a GOP social event. The confrontation occurred on the dance floor of the Marriott reception room, well within the view of other attendees. It was at the end of the campaign a few days before the primary. Mr. Cabana had approached Ms. Harris angrily waving the flier in her face. In this face to face confrontation, the knuckle of his right index finger struck her chin, forcing her back. She staggered backward and experienced physical pain. Her Probable Cause Statement describes the incident as a "humiliating experience". It ended quickly and no one else became involved. Taking complainant's facts as true, defendant's conduct was inappropriate and offensive, but less than assaultive behavior. The striking of Ms. Harris' chin was done in the context with hand gestures, i.e., the waving of the political flier, during a heated

political confrontation. Defendant's conduct under the de minimus statute is not viewed in isolation, but coupled with the surrounding circumstances which play an integral part herein to explain the what, why and how of defendant's intent. The contact was incidental to the heated exchange. It was an offensive touching, not sufficiently serious to warrant criminal prosecution.

By comparison, a case of assaultive intent is illustrated in *State v. Downey*, 242 *N.J.Super.* 367, 576 *A.*2d 945 (Law Div.1988), where attendant circumstances led Judge Humphreys to properly deny a de minimus infraction motion. The defendant therein, Morton Downey, Jr., was the host of a television talk show in which invited guests engaged in a discussion of religious issues. Discussions intensified to the point that defendant left the stage, approached one of the guests at the podium and insulted him. A struggle for the microphone ensued and Mr. Downey struck his guest "in the face with the backward motion of his open hand." The two men had to be separated by security guards. Defendant then engaged another guest in a physical and verbal encounter. A bomb threat ended the program.

Judge Humphreys noted that the complainant suffered physical pain, a stinging sensation. *Id.* at 371, 576 *A.*2d 945. However, that was coupled with his finding that the attendant circumstances involved insults and baiting, along with outlandish, vulgar and provocative behavior which erupted in violence. It involved the direct intentional physical attack upon another in the nature of a slap on the face. *Id.* at 373, 576 *A.*2d 945. It was drama designed to create a contrived sensational confrontation played out before a television audience. In contrast, the confrontation between Mr. Cabana and Ms. Harris was neither contrived nor laced with violent intent by defendant. Unlike *Downey*, the physical contact was an integral part of the verbal exchange not the assaultive result of it.

Not all inappropriate behavior leads to criminal liability. There are instances, such as this, where public opinion will be the better judge of conduct. The what, why and how of which may call for

an apology, not criminal charges. The court is hopeful that the same courage shown by these parties to give of themselves and commit to public service will again be displayed by such a resolution. Motion granted. Complaint dismissed.