Johnnie WATSON, Appellant,

v.

UNITED STATES, Appellee.

No. 05–CM–1357.

District of Columbia Court of Appeals.

Argued May 18, 2007.

Decided Sept. 10, 2009.

Relinda Louisy, Washington, for appellant.

Mary Chris Dobbie, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney at the time the brief was filed, Roy W. McLeese III, Elizabeth Trosman, Patrick Costello, and Lynn C. Mattucci, Assistant United States Attorneys, were on the brief, for appellee.

Before REID and KRAMER, Associate Judges, and SCHWELB, Senior Judge.

KRAMER, Associate Judge:

Following a three-day bench trial, appellant was convicted of simple assault. He was sentenced to 180 days incarceration, all of which was suspended, and placed on one year of supervised probation with the requirement that he enter and complete anger management counseling. Appellant now contends that the trial court erred in denying his motion for judgment of acquittal and, specifically, that the government failed to present sufficient evidence to convict him of simple assault. He also asserts that the trial court erred by failing to advise him that he had no obligation to testify at trial. Finding no merit in either argument, we affirm.

## I.

The facts underlying this appeal are as follows. Appellant and his wife, Angela Sellers–Watson, became involved in a confrontation outside a branch office of the Department of Motor Vehicles (DMV) located at 3200 Pennsylvania Avenue, Southeast. Earlier that day, appellant had gone to the DMV to register a trailer titled in his and his wife's name. Appellant was apparently unaware when he went to the DMV that he needed the signature of his wife as well as his own on the registration

paperwork. He, therefore, called her on her mobile telephone and asked her to meet him at the DMV. He waited three hours for her to arrive. When she did arrive, both she and appellant were irritated-she because appellant's trip to the DMV had interrupted her errands, and he because of the long wait.

Appellant and his wife both testified about what occurred outside of the DMV. While their stories differed in various respects, appellant himself testified that at some point during their heated conversation his wife flipped open her mobile telephone to make a call, and he grabbed the phone's fliptop to stop her, accidently breaking it loose. Appellant was arrested for this incident on August 1, 2005, when the police responded for other reasons to the home he and his wife shared on 50th Street, Northeast. Upon inquiry by a police officer about past instances of domestic violence, Ms. Sellers–Watson recounted the incident in the DMV parking lot. Thereafter, the police placed appellant under arrest.

At the close of the government's evidence, appellant moved for judgment of acquittal. The court denied the motion, finding that the government had established a *prima facie* case. The court noted that while it had difficulty determining exactly what had occurred outside the DMV, appellant's own testimony about grabbing and breaking the mobile telephone was enough to establish an assault under this court's decision in *Mahaise v. United States*.[1] The court further found that appellant's grabbing of the telephone was deliberate, that it occurred in the context of an argument, that it was unprovoked, and that it constituted a battery in that it was a touching without consent.[2]

1. 722 A.2d 29 (D.C.1998).

2. The court also found the appellant not guilty of a related destruction of property charge,

## II.

■ Appellant now argues that the government failed to prove the elements of assault beyond a reasonable doubt. In particular, he asserts that "[i]t is clear from the facts of the case that Ms. Sellers–Watson was not put in fear of immediate injury," and that "Mr. Watson's action was not an attempt to injure Ms. Sellers–Watson." He would distinguish *Mahaise* on the basis that it involved a different standard of proof—that is, "clear and convincing evidence," versus "proof beyond a reasonable doubt," and because the *Mahaise* court specifically noted that the defendant's entering of the victim's apartment without consent "may well have made [his] conduct significantly more threatening." *Mahaise, supra,* 722 A.2d at 30.

*Mahaise* involved a college student who had entered a fellow-student's apartment without permission and become involved in a confrontation. 722 A.2d at 29–30. The police arrested Mahaise for assault, but the United States Attorney's Office declined to prosecute. *Id.* at 29. Mahaise then filed a motion under Super. Ct.Crim. R. 118, which allows a defendant to have his arrest record sealed when he proves by clear and convincing evidence that he did not commit the offense. *Id.* at 29–30. *See also White v. United States,* 582 A.2d 1199, 1201 (D.C.1990). In affirming the trial court's denial of the motion, we wrote: "Appellant's statement that he removed the phone from the complainant's hand and then took her cigarette from her other hand and extinguished it is thus an admission, at least *prima facie,* of two separate assaultive acts." *Mahaise, supra,* 722 A.2d at 30. We also noted that "[a] battery is any unconsented touching of another person," and that "[s]ince an assault is simply an attempted battery, every completed battery necessarily includes an assault." *Id.*

■ "In assessing a claim of evidentiary insufficiency, we must view the record 'in the light most favorable to the government, giving full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact.'" *Alfaro v. United States,* 859 A.2d 149, 160 (D.C.2004) (quoting *Perry v. United States,* 812 A.2d 924, 930 (D.C.2002)). To prevail, appellant must show that "the government presented 'no evidence' upon which a reasonable mind could find guilt beyond a reasonable doubt." *Mihas v. United States,* 618 A.2d.197, 200 (D.C.1992) (quoting *Robinson v. United States,* 506 A.2d 572, 573 (D.C.1986)). "[I]n reviewing bench trials, this court will not reverse unless an appellant has established that the trial court's factual findings are 'plainly wrong,' or 'without evidence to support [them].'" *Id.* (quoting D.C.Code § 17–305(a) (1989)). This standard of review places a "heavy burden" on appellant. *See Olafisoye v. United States,* 857 A.2d 1078, 1086 (D.C. 2004).

Considered under these standards, appellant's attempts to distinguish the instant case from *Mahaise* are unconvincing. The differing standards of proof in each are irrelevant, that is, the government's burden of "proof beyond a reasonable doubt" in this criminal case, versus the movant's burden of "clear and convincing evidence" that the crime for which the movant was arrested did not occur or that the movant did not commit the crime charged in a sealing case. *See White, supra,* 582 A.2d at 1201. The legal proposition upon which the trial court relied in *Mahaise* was that the act of grabbing a telephone out of someone's hand during a

ruling that the government had not proven    the requisite intent.

confrontation is sufficient by itself to establish a *prima facie* case of assault because it is also a battery. Specifically, the court wrote: "A battery is any unconsented touching of another person. Since an assault is simply an attempted battery, every completed battery necessarily includes an assault." *Mahaise, supra,* 722 A.2d at 30 (citing *Ray v. United States,* 575 A.2d 1196, 1199 (D.C.1990)). And as we clarified in *Harris v. United States,* 201 A.2d 532, 534 (D.C.1964), our assault statute, now found at D.C.Code § 22–404, defines common law assault as—

> an attempt with force of violence to do a corporal injury to another; and may consist of any act tending to such corporal injury, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person.

■ *Harris* goes on to say that " 'violence' in its ordinary meaning is not a necessary element of assault, for an attempt to do unlawfully to another any bodily injury however small constitutes an assault," *Id.* at 534, and "actual fear on the part of the person assaulted is not a necessary element of the crime." *Id.* Moreover, as we clarified in *Comber v. United States,* 584 A.2d 26 (D.C.1990), "[a]lthough some misdemeanors, at least when viewed in the abstract, prohibit activity which seems inherently dangerous, they may also reach conduct which might not pose such danger. A special difficulty arises in the case of simple assault ... because that misdemeanor is designed to protect not only against physical *injury,* but against all forms of offensive touching." *Id.* at 50

(citing *Guarro v. United States,* 99 U.S.App. D.C. 97, 99–100, 237 F.2d 578, 580–81 (1956)).

Here, the evidence, considered in the light most favorable to the government, would indicate that, unbidden, Watson entered his wife's car, which she testified belonged solely to her, and that the circumstances of the encounter made his actions seem particularly threatening.[3] The trial court was thus justified in finding that the government had established the elements of assault beyond a reasonable doubt.

### III.

■ Appellant next requests—

> this Honorable Court ... to determine, whether in this case, the Trial Court should have conducted an on the record inquiry to determine whether Mr. Watson made an informed decision as to whether he knew prior to testifying, that he was validly, knowingly, and intelligently, waiving his Fifth Amendment Constitutional Right.

In so doing, he acknowledges that the lack of such an inquiry by the trial court is reviewable in this case only for plain error. This claim, however, is foreclosed by our decision in *Pinckney v. United States,* 906 A.2d 301 (D.C.2006), decided after the parties here had submitted their briefs, which rejected the same argument.

■ We have held that a trial court committed reversible error by failing to determine whether the record demonstrated that a non-testifying defendant had made a knowing and intelligent waiver of her "fundamental and personal right" to

---

**3.** Appellant himself testified that the incident with the mobile phone occurred inside of his wife's car during a heated argument, while Ms. Seller–Watson indicated that she was seated in the driver's seat and that appellant "forced the front of his body into the front of the car," snatched her car keys out of the ignition, and grabbed at the telephone in her right hand.

testify at trial. *See Boyd v. United States,* 586 A.2d 670, 674–680 (1991). In *Pinckney,* however, we refused to extend this holding to circumstances in which the trial court did not advise the defendant that he had a Fifth Amendment right *not* to testify:

> *Boyd* stands for the proposition that a defendant's right to testify on his own behalf in a criminal trial is one that may only be waived by the defendant and suggests that when a defendant does not testify, the trial court should establish an on-the-record waiver to establish that the defendant knew of his right to testify on his own behalf before choosing not to do so. It follows, therefore, that where the defendant elects *to* testify on his own behalf … *Boyd* does not govern. Even if *Boyd's* concern for ensuring a defendant's knowing waiver of a constitutional right were extended to a testifying defendant, the trial court did not plainly err in failing to advise appellant of his Fifth Amendment right not to testify, where appellant was represented by counsel and there was no indication that appellant was unduly compelled to testify.

906 A.2d 301, 307 (D.C.2006) (citations omitted). As in *Pinckney,* appellant here was represented by counsel. He has also not alleged, nor does the record indicate, that he was in any way pressured to testify. We therefore hold there was no Fifth Amendment violation.[4]

---

4. Similarly, we reject appellant's related claim that he was deprived of his Sixth Amendment right to a fair trial.

1. The law does not concern itself with trifles.

2. Although proposing a legislative remedy to a problem raised in a particular case goes beyond a judge's conventional responsibilities, courts (or concurring or dissenting

The Superior Court's judgment of conviction is accordingly *affirmed.*

SCHWELB, Senior Judge, concurring in the judgment but dissenting in part from the analysis:

> *De minimis non curat lex*[1]

### I.

In my opinion, Watson's conduct as found by the judge—as distinguished from the scenario described by the wife, but rejected by the court as unproved—was, at most, a *de minimis* and inconsequential violation of the assault statute. Surely husbands, wives, lovers and friends have snatched or grabbed objects from each other on innumerable occasions without the notion occurring to anyone that a crime has been committed or that the criminal justice system should become involved. *Cf. State v. Cabana,* 315 N.J.Super. 84, 716 A.2d 576, 578 (1997), *aff'd,* 318 N.J.Super. 259, 723 A.2d 635 (1999) (discussing frequency of comparable occurrences). In light of this court's recent decision in *Dunn v. United States,* 976 A.2d 217, 221–22 (D.C.2009), however, this court lacks the power, in the absence of statutory authorization, to vacate Watson's conviction on *de minimis* grounds.

For the reasons set forth in the some detail below, I consider it disproportionate and unjust to saddle Watson with a criminal conviction under all of the circumstances of this case. Accordingly, I think it appropriate to propose a legislative remedy for this type of situation.[2] Specifical-

---

judges) occasionally do so in the interests of justice. "We have heretofore deemed it appropriate in an opinion to suggest statutory changes." *Zalkind v. Scheinman,* 139 F.2d 895, 898 n. 3(b) (2d Cir.1943) (Frank, J., joined by Learned Hand, J.) (citations omitted); *see also Moravian School Advisory Bd. v. Rawlins,* 70 F.3d 270, 279 (3rd Cir.1995) (Becker, J., concurring in part and dissenting in part); *Am. Mach. & Metals, Inc. v. De*

ly, I suggest that the Council of the District of Columbia consider adopting the approach of the Model Penal Code (MPC) § 2.12 (2001), as several other jurisdictions have done, *see* Brent G. Filbert, Annotation: *Defense of Inconsequential or De Minimis Violation in Criminal Prosecution*, 68 A.L.R. 5th 299 (1999 & Supp. 2006), and that District of Columbia courts be authorized to dismiss criminal charges where the circumstances "clearly demonstrat[e] that conviction or prosecution of the defendant . . . would constitute or result in injustice." N.Y.CRIM. PROC. LAW § 170.40(1) (1979) (quoted in *Dunn*, at 223).

## II.

The incident that led to Watson's conviction of a criminal offense arose out of an annoying misunderstanding which grew heated and, eventually, out of control. Before it was all over, Watson had received a bloody lip, a knee in the groin, and a criminal conviction. His wife ended up with a broken cell phone.

On July 25, 2006, Watson drove to the DMV to register a trailer. When he arrived there, he learned that because the trailer was registered in his wife's name as well as his own, registration would require the signatures of both spouses. He called his wife, Angie Sellers–Watson, and he told her about the problem. Ms. Sellers–Watson, who had made other arrangements for the day, became irritated when she had to change them. She ultimately joined her husband at the DMV, but he had to wait for her there for more than three hours.

When Ms. Sellers–Watson finally arrived, both spouses were tense and angry. Notwithstanding the very recent birth of their son, the couple had previously encountered marital problems. The wife testified that by the time of the confrontation at the DMV, she had already "withdrawn from her husband emotionally."[3] As she candidly put it, "my demeanor was not pleasant at all." Watson was likewise furious.

After Watson and his wife had signed the necessary documents, they walked to her car and sat down in the vehicle.[4] By this time, the atmosphere had become increasingly hostile. After a less than loving tete-a-tete, things came to a head when Ms. Sellers–Watson, obviously exasperated by the conversation, pulled out her cell phone and lifted the lid in order to call her mother and sister. Watson testified that he tried to stop his wife from using the cell phone because he wished to "finish talking" with her. It is undisputed that at this point, Watson grabbed the cell phone and pulled it out of his wife's hand. The phone landed on the floor, and by the end of the incident the phone was broken. It is also undisputed that, in response to the snatching of the phone Ms. Sellers–Watson punched her husband in the mouth, drawing blood, and that she kneed him in the groin.

---

*Bothezat Impeller Co., Inc.*, 173 F.2d 890, 893 (2d Cir.1949) (Frank, J., dissenting); *Parke–Davis & Co. v. H.K. Mulford Co.*, 189 F. 95, 115 (C.C.S.D.N.Y.1911) (Learned Hand, J.). Indeed, I have in the past suggested remedial legislation, *District of Columbia v. Morrissey*, 668 A.2d 792, 800–01 (D.C.1995); *see also Cass v. District of Columbia*, 829 A.2d 480, 487 (D.C.2003) (describing legislative reaction to proposal in *Morrissey* ), or a change in the Superior Court's Rules of Criminal Procedure, *Diamen v. United States*, 725 A.2d 501, 514 (D.C.1999), in order to further what I (and in *Diamen* the court) believed to be the interests of justice.

3. Watson testified that he and his wife still had a "functional marriage."

4. The wife claimed that Watson had forced his way into her car, but the judge rejected as unproved this portion of her testimony.

After this most unpleasant marital spat, Ms. Sellers–Watson drove away. She made no effort to report the incident to the police. In fact, she testified that she never had any intention of reporting it. Subsequently, at Watson's sentencing, she described his offense as "minuscule." Approximately a week after the contretemps at the DMV, however, the police were called to the couple's home following an unrelated disagreement. Officers questioned Ms. Sellers–Watson regarding any past complaints that she might have against her husband, and she provided them with her version of the events at the DMV. Watson was placed under arrest, and the United States filed a criminal information charging him with assault and malicious destruction of property.

At Watson's bench trial, Ms. Sellers–Watson testified that while she and Watson were seated in the car and arguing, she pulled out her cell phone in order to make a call. According to Ms. Sellers–Watson, her husband grabbed her hand, twisted her wrist, wrenched the cell phone out of her hand, and intentionally broke it. She acknowledged that she punched her husband in the mouth, causing him to bleed. Watson admitted that he grabbed the phone, but he testified that he "never laid [his] hands on her," and he denied breaking the cell phone intentionally.

In his closing argument, the prosecutor made it clear that the government was accusing Watson of far more than merely grabbing the phone. The prosecutor stated, in pertinent part:

> He made an attempt or effort by force or violence to put his hands on his wife, to twist her arm, and to get her to give up this phone.... So what did he do? He grabs her by the wrist, twists her wrist, grabs her hand, tries to get this phone out of it.... What is an injury? An injury is an offensive touching to a

person of reasonable sensibilities. She didn't give him permission to do it. She didn't want to be touched. In fact, it came to the point where she finally punched him and he was bleeding and then she kneed him in the groin. It was out of self-defense.

Nowhere did the prosecutor suggest that anything less than the twisting of the wife's arm or the wrist or the grabbing of her hand constituted the assault. Specifically, the prosecutor made no argument, even in the alternative, to the effect that if Watson did not twist his wife's wrist or otherwise lay his hands on her, Watson was nevertheless guilty of assault on the basis of the snatching the cell phone. Further, the prosecutor's assertion that punching the defendant in the mouth and kneeing him in the groin were legitimate acts of self-defense would make no sense at all if the assault on the wife had consisted solely of snatching the phone.

The trial judge, after noting that the testimony as to what occurred in the parking lot of the DMV was contradictory and somewhat confusing, found that

> two clear things that they both have memories of [are] the phone breaking and him being hit in the mouth. All of the other things, there—the court was—there were issues concerning grabbing keys and blocking this, grabbing hands and the like, *and I'm not really satisfied* that the government-that I can resolve that conflict, *that the government has proved each and every element of that offense of assault beyond a reasonable doubt with respect to the incidents that occurred in the parking lot.* I just—I've listened. I've looked at the-I've listened to the demeanor. I watched the demeanor of the witnesses who have testified, both the defendant and the complainant, and I'm not really satisfied. (Emphasis added.)

The judge thus rejected as unproved the government's claim that Watson engaged in arm-twisting or wrist-grabbing or the like. The judge also found Watson not guilty of malicious destruction of property, concluding that the breaking of the cell phone was unintentional. The judge concluded, however, that the snatching of the phone was an assault:

> [T]hey were sitting in the car, he was angry, he was upset, and they were arguing. What she did was, pulled out the phone and she's going to ignore him and make a phone call, and he said, "You're not. You're not going to do that. We're talking," and he grabs the phone. He pulls it and breaks it. That's an assault.

As authority for his conclusion that grabbing the wife's cell phone constituted an assault, the judge cited *Mahaise v. United States*, 722 A.2d 29 (D.C.1998).

### III.

*Mahaise* involved a motion pursuant to Super. Ct.Crim. R. 118 to seal the records of his arrest. The case arose out of an altercation between the appellant, a student at a local university, and a female fellow-student. The incident that led to Mahaise's arrest took place in the young woman's apartment. According to Mahaise's affidavit, he told the complainant that "we have to talk," but the complainant was apparently unwilling to speak with him. Insisting that the two of them continue their conversation, Mahaise grabbed a telephone from the woman's hand and took a cigarette out of her other hand. Moreover, the complainant's roommate apparently demanded that Mahaise leave the apartment. Instead, Mahaise reentered the complainant's bedroom-a circumstance which, as this court noted "may well have

made appellant's conduct significantly more threatening." *Mahaise*, 722 A.2d at 30.

This court affirmed the trial court's order denying without a hearing Mahaise's motion to seal. The court observed that Mahaise's admitted removal of the phone and the cigarette from the complainant's person established, "at least *prima facie*," two separate assaultive acts. The court therefore concluded that Mahaise's affidavit was insufficient on its face to establish by clear and convincing evidence, Super. Ct.Crim. R. 118(a), that Mahaise did not commit the crime of assault. *Id.*

Our decision in *Mahaise*, however, arose in a context dramatically different from the case before us. The issue in *Mahaise* was not, as it is here, whether the government had proved that a husband had committed a criminal assault on his wife by snatching a cell phone from her hand. Rather, the question before the court was whether *the defendant* had shown by clear and convincing evidence that he had *not* committed a crime.[5]

In requesting an order to seal the record of an arrest, a criminal defendant is essentially seeking, in some measure, to conceal from the public an event that has in fact occurred. It is indisputable that Mahaise *was* arrested. If the record of his arrest were sealed, then it would appear to the world at large that he had *not* been arrested. Rule 118 makes such relief available in some cases in the interests of justice, but courts necessarily exercise a measure of caution before ordering the sealing of multiple records, thereby (at least for some purposes) effectively converting an event into a non-event. It is one thing to hold that a defendant who

---

5. The majority opinion seems to imply that in a motion to seal an arrest record, the government must prove the defendant's guilt by clear and convincing evidence. If that is what my colleagues mean to say, it is incorrect.

snatched a phone and a cigarette is not entitled to an order which would conceal from the public the fact of his arrest. It is quite another matter to hold, on the record before us, that the proof that Watson snatched his wife's phone established beyond a reasonable doubt that Watson committed a crime.

The history of the charge against Mahaise is instructive in another respect. The appellant in *Mahaise* was arrested, but the United States Attorney's office "no papered" the case. *Mahaise*, 722 A.2d at 29. In the present instance, the complaining witness, Watson's wife, claimed that Watson had forced his way into her car and twisted her arm and grabbed her hand in order to wrench the cell phone from her grasp. This was a far more serious scenario than that in *Mahaise*, and if the Assistant United States Attorneys believed that there was probable cause to credit Ms. Sellers–Watson's account, there was ample reason to proceed with the prosecution. If on the other hand, the prosecutors had anticipated that the judge would find the evidence of twisting and grabbing insufficient, and that this would leave them only with the snatching of the phone, then, assuming consistency on the prosecuting authority's part, there is reason to believe, based on what occurred in *Mahaise*, that the United States Attorney's office might have no-papered the *Watson* case just as it

did *Mahaise*.[6] Moreover, in *Mahaise*, the alleged victim did not strike or harm the defendant, while in Watson's case, his wife punched him in the mouth and kneed him in the groin (but was not charged at all.)

Notwithstanding the foregoing discussion, there is language in *Mahaise*-specifically, language quoted by the majority at pages 5–6 of its opinion in this case-which supports the proposition that a snatching such as the one in this case may violate the assault statute. *See also* footnote 14, *infra*. In *Mahaise*, however, neither party addressed the issue on which I focus in this opinion, namely, whether any violation was *de minimis*.

## IV.

In their initial briefs in this case, the parties did not address the question whether this court should hold that Watson's snatching of his wife's cell phone, standing alone, was inconsequential and subject to the maxim *"de minimis non curat lex."* Prior to oral argument, the court, *sua sponte*, directed the parties to file supplemental memoranda with respect to the *"de minimis"* issue. "Both parties have taken advantage of the court's direction, and the point has now been fully briefed, so that each side has had a full opportunity to have its say on the issue." *Watkins v. United States*, 846 A.2d 293, 296 (D.C.2004).[7] The government there-

---

6. There is no evidence in the record regarding what the prosecutors would have done if they had realized that their only evidence was the snatching, and in any event, fact-finding, even in a concurring opinion, transcends an appellate judge's function. I mention the no-papering of the charges in *Mahaise* only because it is consistent with my view that the snatching of the wife's phone, characterized as "minuscule" by the purported victim, is the kind of incident that surely occurs innumerable times during arguments between spouses or close friends without anyone viewing it as a crime worthy of prosecution.

7. *See also Outlaw v. United States*, 632 A.2d 408 (D.C.1993), holding, following court-ordered briefing of a question not initially raised, that the court "may consider an issue antecedent to ... and ultimately dispositive of the dispute before it, even an issue the parties fail to identify and brief." *Id.* at 411 n.7 (quoting *United States Nat'l Bank of Oregon v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 447, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993)); accord *Randolph v. United States*, 882 A.2d 210, 226–27 (D.C.2005).

fore has not been prejudiced by the court's consideration of the question whether any violation of the law by Watson was *de minimis, id.,* and the point is properly before us for decision.[8]

The court's *sua sponte* order directing the briefing of the *de minimis* issue was appropriate, in my view, because a criminal conviction of Watson is disproportionate, under all of the circumstances, to his conduct as found by the judge. In general, a conviction of a criminal offense will not only subject a defendant to punishment,[9] but it will become his constant companion for the remainder of his life.[10] It is likely to haunt him whenever he applies for employment, public or private. In many or most cases, it will affect the respect which he is accorded by his fellow-citizens and bring him "shame before his family, friends and peers." *Smith, supra* note 10, 480 A.2d at 239. It will impair his pursuit of happiness contemplated by the drafters of our Declaration of Independence. An unmerited criminal conviction stands in the way of a defendant's determination to lead a happy and productive life.

Although precise statistics are not available, I think it fair to say that very few, if any persons who have snatched an object from a spouse, relative or close friend in the middle of an argument, with no intention to steal it or damage it, have been treated by society as criminals. Consider a somewhat analogous hypothetical. Suppose that a husband picks up a dish towel to dry the dishes. His wife, irritated because the husband had clumsily dropped and broken some of her china on the previous evening, angrily grabs the towel and snatches it from her spouse. The husband responds by punching and kicking the wife. Would any reasonable person conclude that the wife has committed a crime and that she could justly be convicted of assault?[11]

A letter from the admissions office of a law school, addressed to John, a college senior, arrives in the mail at John's home. John retrieves the letter. Harry, John's twin brother, who has also applied to law school and is desperate to see if John was admitted, snatches it from him. John pushes Harry to the ground and takes back the letter. Is it reasonable under these circumstances, for Harry to be adjudged a criminal and to have a criminal record for the rest of his life?

In the present case, there are several circumstances which support the view that any violation by Watson of the assault statute was *de minimis* and, from a common sense perspective, not a crime meriting prosecution or conviction. As previously noted, Watson's accuser obviously thought so. At sentencing, Watson's wife minimized the incident in the DMV park-

---

**8.** In any event, since the court is not holding that Watson's conduct was *de minimis,* any question as to the standard of review is academic.

**9.** Watson received a suspended sentence of imprisonment for 180 days, he was placed on probation, and he was required, as a condition of his probation, to complete an anger management-course in which he was already enrolled at the time of sentencing. But aside from the specifics of the sentence, the very fact of Watson's conviction of a criminal offense runs afoul, in my view, of the Mikado's "object all sublime" to let "the punishment fit the crime."

**10.** *Cf. State v. Smith,* 195 N.J.Super. 468, 480 A.2d 236, 238 (1984) ("[A] record of conviction in this case could cause career problems for [defendant] for years to come.")

**11.** This hypothetical does not depend on the sex of the snatcher. The same reasoning would apply if a husband snatched the towel from the wife, or if one roommate snatched an object from another roommate of the same sex.

ing lot and she testified at trial that she never intended to report it. Indeed, Ms. Sellers–Watson drove away from the DMV without making any report or complaint. At trial, as I have observed in summarizing the facts, the prosecutor did not assert that the snatching of the telephone, standing alone, constituted a criminal offense. On the contrary, he relied on Ms. Sellers–Watson's claim that her husband grabbed her hand and twisted her arm to force her to give up the cell phone.[12]

Moreover, if the facts as ultimately found by the judge (as distinguished from Ms. Sellers–Watson's accusations) had been presented to the United States Attorney's office, charges might not have been brought at all. *Cf. Smith, supra* note 10, 480 A.2d at 241 ("[c]ountless filed complaints charging offenses of greater magnitude than that involving this defendant are [or would be] routinely dismissed by prosecutors...."). In *Mahaise*, a double "snatching" case was "no papered." The evidence of a crime in this case (given the

judge's findings) was no stronger than the evidence in *Mahaise*.[13] Indeed, unlike the defendant in *Mahaise*, Watson finished up with a bleeding mouth and a knee in the groin.

### V.

"Some jurisdictions have recognized *de minimis*-type defenses, but they have done so through legislation, not judicial decree." *Dunn,* 976 A.2d at 223. The District of Columbia, however, has not "joined ranks" with these jurisdictions, and we held in *Dunn* that this court therefore "lack[s] the power to give Dunn the relief that he seeks," *i.e.,* to set aside his conviction because "his violation of the law, if any, was *de minimis.*" *Id.,* at 221. In light of *Dunn,* I cannot responsibly vote to reverse Watson's conviction on *de minimis* grounds.[14] For that reason, I concur in the judgment of affirmance.

---

12. The government could have contended that even if the judge did not credit the wife's claim that Watson grabbed her hand and twisted her arm, then, in the alternative, the snatching of the phone constituted a criminal assault. The prosecutor did not, however, make this claim. Indeed, there was arguably a variance between the crime alleged by the government and the offense of which the judge found Watson guilty.

13. I am not suggesting that the court has the authority to decide whether a defendant should be prosecuted. "[T]he decision whether or not to prosecute a particular case is ... one for the prosecutor to make, not the trial judge." *United States v. White,* 689 A.2d 535, 538 (D.C.1997). Rather, given *Mahaise* and the other circumstances, it appears questionable whether Watson *would* have been prosecuted.

14. Even aside from the *de minimis* issue, the position that Watson's conduct fell short of a criminal assault is not implausible. In *Alfaro v. United States,* 859 A.2d 149, 156 (D.C. 2004), we stated:

The District's assault statute, D.C.Code § 22–504 (1996) (now § 22–404(a) (2001)), does not enumerate the elements of this offense. In the absence of a statutory definition, we have applied the common law of criminal assault. *See, e.g., Mungo v. United States,* 772 A.2d 240, 245 (D.C.2001). The essence of the common law offense of assault is the intentional infliction of bodily injury or the creation of fear thereof. "An assault has been defined by this court to be 'an attempt with force or violence to do a *corporal injury* to another....'" *Beausoliel [v. United States* ], 71 App. D.C. 111, 115 n. 14, 107 F.2d [292], 296 n. 14 [1939] (emphasis added) (quoting *Patterson v. Pillans,* 43 App.D.C. 505, 506 (1915)).

It is not obvious to me that the snatching of a phone from one's spouse in the middle of a verbal argument comes within the language of *Alfaro. Mahoney v. United States,* 243 A.2d 684 (D.C.1968), in which we upheld an assault conviction of a defendant who had snatched a bag of coins from the victim's hand, is distinguishable in that it involved an intrusion upon a stranger whom the defen-

In my view, however, this is the kind of case which the *de minimis* statutes were designed to reach. Section 2.12 of the Model Penal Code (MPC) provides in pertinent part as follows:

§ 2.12 De Minimis Infractions.

The Court shall dismiss a prosecution [15] if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the defendant's conduct:

(1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense; or

(2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction....

The exercise by a court of the power to dismiss a prosecution by resort to the maxim *"de minimis non curat lex"* is judicial in nature, and the vesting of that authority in the judicial branch does not contravene the doctrine of separation of powers. *State v. Park,* 55 Haw. 610, 525 P.2d 586, 592 (1974).

The purpose of a *de minimis* statute is to remove "petty" infractions from the reach of the criminal law. *In re R.W.,* 855 A.2d 107, 109 (Pa.Super.Ct.2004). Under these provisions, dismissal of a prosecution by the court is contemplated where no harm was done by the defendant either to the victim or to society. *Commonwealth v. Moses,* 350 Pa.Super. 231, 504 A.2d 330, 332 (1986). Dismissal is appropriate where the matter is too trivial to warrant the condemnation of a conviction, for "mere trifles or technicalities must yield to practical common sense and substantial justice." *State v. Brown,* 188 N.J.Super. 656, 458 A.2d 165, 169 (1983) (citation omitted). "The Legislature in recognition of the serious consequences which may attend a conviction has granted this dismissal option to avoid an injustice in a case of technical but trivial guilt." *Smith, supra* note 10, 480 A.2d at 241. The *de minimis* doctrine is designed to provide the court with discretion similar to that exercised by the police, prosecutors and grand jurors, who constantly make decisions as to whether it is appropriate to seek a conviction under the particular circumstances. *State v. Wells,* 336 N.J.Super. 139, 763 A.2d 1279, 1281 (2000). That discretion is appropriately exercised by the court, which is the institution best equipped to

---

dant robbed; unlike Watson's actions, the conduct in *Mahoney* was far more serious than an over-reaction by the defendant following an argument with his wife. Nor, in my view, is Watson's conduct comparable to intentional spitting in a police officer's face. *Cf. Ray v. United States,* 575 A.2d 1196, 1198–1200 (D.C.1990).

Nevertheless, the District's misdemeanor assault statute "is designed to protect not only against physical *injury,* but against all forms of offensive touching." *Comber v. United States,* 584 A.2d 26, 50 (D.C.1990) (emphasis added in *Comber*) (citing *Guarro v. United States,* 99 U.S.App. D.C. 97, 99–100, 237 F.2d 578, 580–81 (1956)); *see also maj. op.* at

[1257]. I entertain considerable doubt whether the assault statute was intended to reach a simple snatching by a spouse during a domestic spat when the snatching was obviously designed to retain the victim's attention rather than to harm her. Nevertheless, I am not prepared to dissent from the majority's view that our precedents can be construed as supporting Watson's conviction.

**15.** The statutes of at least two states provide that the court "may" rather than "shall" dismiss a prosecution if the conditions set forth in those statutes are met. *See* N.J. STAT. ANN. § 2C:2.11 (discussed in *Smith, supra* note 10, 480 A.2d at 237); HAW.REV.STAT. § 702–236(1).

resolve such issues impartially. In exercising its discretion, the court may consider a wide variety of "attendant circumstances." *Park,* 525 P.2d at 591; *Cabana,* 716 A.2d at 579 (defendant's conduct "under the de minimis statute is not viewed in isolation, but coupled with the surrounding circumstances which play an integral part herein to explain the what, why and how of defendant's intent.").

Case law construing *de minimis* statutes in the context of comparatively minor assaults discloses that, depending on the "attendant circumstances," *see* MPC § 2.12, such conduct may or may not be *de minimis.* In *State v. Ornellas,* 79 Hawai'i 418, 903 P.2d 723 (1995), *cert. denied,* 80 Hawai'i 187, 907 P.2d 773 (1995), a woman slapped her husband in the face hard enough to leave a large red mark. An officer testified that the blow resembled "a round house punch." *Id.* at 725. The husband claimed that he suffered a "low throbbing pain" on the side of his face, as well as "headaches for a couple of days." *Id.* at 726. There was no apparent provocation for the blow, and the incident occurred in the presence of police officers. The trial court held that the conduct violated a Hawaii statute prohibiting abuse of members of one's family or household and that it was not *de minimis.* The intermediate court of appeals concluded that the trial court did not abuse its discretion in ruling that the infraction was "not too trivial to warrant the condemnation of conviction." *Id.* at 728. The Supreme Court of Hawaii denied *certiorari.* 907 P.2d at 773.

In *State v. Cabana,* 716 A.2d at 578, on the other hand, Douglas Cabana, a politician, was engaged in a heated dispute with Barbara Harris, who was running against Cabana in a local primary election. The rivals were at a political function at a local hotel. Ms. Harris had circulated a flier critical of Mr. Cabana, and the latter initiated a confrontation, apparently on the dance floor, by waving the flier in Ms. Harris's face. The knuckle of Mr. Cabana's right index finger came into contact with Ms. Harris's chin. Ms. Harris staggered backwards, and the court found that she experienced physical pain. The defendant contended that his conduct, if it constituted an assault at all, was trivial, and that it did not cause or threaten a result which the criminal assault statute was designed to prevent.[16] The trial judge agreed, holding that although there had been an offensive touching, it was not sufficiently serious to warrant criminal prosecution because "the contact was incidental to the sequence of events rather than the result of assaultive intent." *Id.* at 578. In a passage germane to the present case, the judge wrote:

> In our collective experiences, for example, we have all observed two workers or friends or a parent and child arguing when one may firmly grab the arm of the other to direct action or emphasize a point. As a result, physical pain may occur, but any "bodily injury" caused is not sufficiently serious to fall within the assault statute.

*Id.* The court added that "[c]ommon sense prevails, and this court must be the 'gatekeeper' in this regard." *Id.* (citing *State v. Hoffman,* 149 N.J. 564, 695 A.2d 236, 248 (1997)). The judge concluded that Cabana's conduct, while "inappropriate and offensive," was incidental to the heated exchange and "not sufficiently serious to

---

16. Unlike the common law rule, which is still in effect in the of the District of Columbia, *Alfaro, supra* note 14, 859 A.2d at 156, New Jersey's assault statute requires proof of bodily injury, although "[n]ot much is required to show bodily injury." *Cabana,* 716 A.2d at 578. The difference between the two statutes does not, however, affect the *de minimis* analysis, which presumes that there has been at least a technical violation of the statute.

warrant criminal prosecution." *Id.* at 579, 695 A.2d 236. The Appellate Division of the Superior Court affirmed *per curiam* without opinion. *State v. Cabana,* 318 N.J.Super. 259, 723 A.2d 635 (1999).

In my opinion, the present case, given the trial judge's findings, resembles *Cabana* more than *Ornellas.* Indeed, if anything, the defendant's conduct in *Cabana* was more serious than Watson's actions in this case. Unlike Watson, Cabana inflicted some measure of pain on his female adversary. In fact, Watson's situation was more like that of *the victim* in *Ornellas.* Mrs. Ornellas' husband was slapped, while Ms. Sellers–Watson was unharmed, Mr. Watson received a bloody lip and a knee in the groin.[17] Moreover, as in *Cabana,* the snatching of the phone was arguably "incidental to the sequence of events" rather than an intentional act intended to harm Ms. Sellers–Watson. In any event, Watson has a reasonable basis for claiming that even assuming, *arguendo,* that his snatching of the cell phone "caused or threatened the harm or sought to be prevented by [the assault statute]," it did so "only to an extent too trivial to warrant the condemnation of conviction." MPC § 2.12(2).

## VI.

In recommending the enactment of New Jersey's *de minimis* statute, that State's Law Revision Commission noted that the police, prosecutors and grand jurors must frequently deal with the question whether particular conduct merits prosecution and conviction. The Commission surmised that some judges may also decline to convict defendants for technical violations if the conviction would bring about an absurd result. The Commission continued:

> The drafters of the MPC summarize all of this as a "kind of unarticulated authority to mitigate the general provisions of the criminal law to prevent absurd applications." In order to bring this exercise of discretion to the surface and to be sure that it is exercised uniformly throughout the judicial system, [the *de minimis*] Section of the Code has been included.

*Smith, supra* note 10, 480 A.2d at 240.

In my opinion, the record in this present case reflects the soundness of a policy which would permit a court to act as a gatekeeper, and, at least, to give serious consideration to vacating Watson's conviction. I do not criticize the government for initiating the prosecution, for the accusation directed at Watson by his wife was not *de minimis,* and probable cause existed for charging an assault based on arm-twisting and the like. However, once the judge had made his findings and rejected

---

**17.** I recognize that Watson's alleged offense was completed *before* his wife punched and kneed him, and her forceful after-the-fact response is technically not relevant to the question whether the snatching constituted an assault. As the court noted in *Smith, supra* note 10, 195 N.J.Super. 468, 480 A.2d 236, however, the New Jersey *de mininis* statute

> directs that in making his determination the assignment judge shall have "regard to the nature of the conduct charged to constitute an offense *and the nature of the attendant circumstances.*" Emphasis supplied. Defendant's conduct was not intended to be the sole criterion.

*Id.* at 239. One relevant circumstance is whether a defendant who has committed a minor or marginal violation of the law has already been subjected to significant adverse consequences as a result of his conduct. *Id.* (applying *de minimis* statute where an engineering student who had stolen three pieces of bubble gum valued at fifteen cents suffered arrest, adverse publicity, shame and legal expenses.) It is therefore relevant in the *de minimis* calculus that based on the trial judge's findings in this case, Watson was arguably more sinned against than sinning.

Ms. Sellers–Watson's most serious allegations, it was at least arguably unjust and disproportionate to burden Watson with a criminal conviction.

I recommend a legislative remedy in this case, *see* note 2, *supra,* because, in my view, the adoption of the relevant provisions of the MPC (or of the Hawaii and New Jersey variations of the MPC) would promote justice by protecting citizens from significant burdens attendant upon a criminal conviction when they have committed, at most, trifling and essentially harmless violations of the law. "Proportionality is of consummate importance in judicious adjudication." *Allen v. United States,* 603 A.2d 1219, 1227 (D.C.1992) (en banc), *cert.* *denied* 505 U.S. 1227, 112 S.Ct. 3050, 120 L.Ed.2d 916 (1992).

### VII.

For the foregoing reasons, I concur only in the judgment. I request that our legislature consider providing statutory relief for cases, in which the defendant's offense, if any, was *de minimis.*