**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3826-14T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

VIRGINIA THOMAS,

    Defendant-Appellant.

_____

> Argued February 14, 2017 — Decided October 17, 2017
>
> Before Judges Ostrer, Leone and Vernoia.
>
> On appeal from the Superior Court of New
> Jersey, Law Division, Salem County, Indictment
> No. 14-01-0034.
>
> Barry J. Serebnick argued the cause for
> appellant (Helmer, Conley & Kasselman, P.A.,
> attorneys; Mr. Serebnick, of counsel and on
> the brief).
>
> Marianne V. Morroni, Assistant Prosecutor,
> argued the cause for respondent (John T.
> Lenahan, Salem County Prosecutor, attorney;
> Ms. Morroni, of counsel and on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

After a jury trial, Virginia Thomas was convicted of third-degree interference with custody, N.J.S.A. 2C:13-4. She took her daughter to a make-up water safety class, rather than to the child's father for his Monday evening parenting time as a court order prescribed. The court sentenced defendant to one year of non-custodial probation.

Defendant raises the following points for our consideration:

POINT I

THE PROSECUTOR'S FAILURE TO PRESENT EXCULPATORY EVIDENCE TO THE GRAND JURY WAS MISCONDUCT AND WARRANTS A REVERSAL OF THE CONVICTION AND A DISMISSAL OF THE INDICTMENT WITH PREJUDICE.

POINT II

THE TRIAL COURT IMPROPERLY DENIED THE DEFENDANT'S MOTION FOR DISMISSAL BASED UPON THE GROUNDS THAT THE CONDUCT CHARGED IS DE MINIMIS.

POINT III

THE TRIAL COURT ERRED, AND DENIED THE DEFENDANT A FAIR TRIAL BY LIMITING THE ABILITY OF THE DEFENDANT TO PRESENT HER DEFENSE.

POINT IV

THE TRIAL COURT ERRED IN INSTRUCTING THE JURY, BY FAILING TO MOLD THE INSTRUCTIONS TO THE FACTS OF THIS CASE.

Defendant's principal point on appeal is that the trial judge mistakenly exercised his discretion in denying her motions to

dismiss the pre-indictment complaint and the indictment on the ground her infraction was de minimis. N.J.S.A. 2C:2-11. As we are not satisfied the trial court considered all relevant factors in its de minimis analysis, we remand to the assignment judge for reconsideration.

I.

The de minimis statute authorizes an assignment judge to dismiss a prosecution on one of three grounds, after considering "the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances." Ibid. First, the judge may dismiss if the defendant's conduct was "within a customary license or tolerance," which the victim did not expressly negate, and which was not inconsistent with the legislative purpose. N.J.S.A. 2C:2-11(a). Second, the judge may dismiss if the conduct "[d]id not actually cause or threaten the harm or evil" that the statute was designed to prevent, "or did so only to an extent too trivial to warrant the condemnation of conviction." N.J.S.A. 2C:2-11(b). Third, dismissal may be ordered if the defendant's conduct "[p]resents such other extenuations that it cannot reasonably be regarded as envisaged by the Legislature in forbidding the offense." N.J.S.A. 2C:2-11(c).

There are no published decisions that apply the de minimis statute to a prosecution for interference with custody. However,

3                                                          A-3826-14T1

we have applied the statute in other contexts, focusing on the "triviality" ground for dismissal. See State v. Evans, 340 N.J. Super. 244 (App. Div. 2001) (reversing de minimis dismissal of shoplifting prosecution, where defendant took $12.90 hair accessory); State (Harris) v. Cabana, 315 N.J. Super. 84 (Law Div. 1997), aff'd o.b., 318 N.J. Super. 259 (App. Div. 1999) (affirming de minimis dismissal of private assault prosecution, where politician waving flier at a rival at a political gathering grazed the rival with his knuckle); State v. Zarrilli, 216 N.J. Super. 231 (Law Div.), aff'd o.b., 220 N.J. Super. 517 (App. Div. 1987) (affirming de minimis dismissal of under-age drinking prosecution for one sip of beer by a twenty-year-old).

"The benefit[s] of dismissal" consists of the value of not tainting a citizen with a conviction, and saving judicial resources. Zarrilli, supra, 216 N.J. Super. at 239. "When a de minimis motion is addressed it must be assumed that the conduct charged actually occurred." Id. at 236; see also Evans, supra, 340 N.J. Super. at 249; Cabana, supra, 315 N.J. Super. at 86.

The assignment judge's de minimis determination is discretionary. The law states an assignment judge "may" dismiss a charge. N.J.S.A. 2C:2-11; see also State v. Brown, 188 N.J. Super. 656, 672-73 (Law Div. 1983) (reviewing legislative history and contrasting permissive language in Criminal Code with proposed

mandatory language which it replaced). The assignment judge may decline to dismiss, even after making the requisite finding under the statute. Cf. II Final Report of the New Jersey Criminal Law Revision Commission, § 2C:2-11 Commentary, at 74 (Oct. 1971) (Final Report) (commenting that the proposed use of the word "shall" — which the Legislature later rejected — meant "that if the Court makes the requisite findings, it must dismiss"). Nonetheless, the discretionary decision must be moored to a fact-sensitive review of the "nature of the conduct" and the "nature of circumstances." See Evans, supra, 340 N.J. Super. at 248-49; Cabana, supra, 315 N.J. Super. at 88; see also State v. Smith, 195 N.J. Super. 468, 471-72 (Law Div. 1984).

Addressing a triviality analysis under N.J.S.A. 2C:2-11(b), we stated that "what is most important is the risk of harm to society of defendant's conduct." Evans, supra, 340 N.J. Super. at 253; see also Zarrilli, supra, 216 N.J. Super. at 239 (stating risk of harm to society is "[t]he one question to be asked and answered"). The "risk of harm" must be evaluated in light of "the circumstances surrounding the commission of the offense." Id. at 240. For example, possession of a minute quantity of a drug may pose a greater risk of harm in a prison, than elsewhere. Ibid. In property crimes, the amount and value of the property is likely relevant. Compare Evans, supra, 340 N.J. Super. at 252 (holding

that shoplifting a $12.90 item is not trivial), with Smith, supra, 195 N.J. Super. at 477 (finding trivial the theft of three fifteen-cent pieces of bubble gum).  The presence of contraband, the threat of violence, or the use of weapons may convert a trivial offense into a non-trivial one.  See Zarrilli, supra, 216 N.J. Super. at 240.

A defendant's "prior criminal history may be taken into account in determining triviality . . . ." Evans, supra, 340 N.J. Super. at 253.  The court in Smith, 195 N.J. Super. at 474 distinguished between a "theft of a minor item by a professional shoplifter" and "an aberrative" violation of law "by an otherwise reputable and law-abiding citizen." (citing State v. Ivan, 33 N.J. 197, 202 (1960)).  A defendant's state of mind may also be relevant.  Cabana, supra, 315 N.J. Super. at 88.

Although our published cases have focused on a triviality analysis under N.J.S.A. 2C:2-11(b), the Code also empowers the judiciary, under N.J.S.A. 2C:2-11(c), "to use a rule of reason," see Final Report, supra, § 2C:2-11 Commentary, at 75, to find a crime de minimis based on extenuating circumstances.  Such "extenuations" must place the prosecution beyond what the Legislature envisaged in defining the criminal offense.  N.J.S.A. 2C:2-11(c).  The Law Revision Commission conceived such "extenuations" as "extraordinary and unanticipated mitigations for

the particular conduct." Final Report, supra, § 2C:2-11 Commentary, at 75. Many of the factors that apply to a triviality analysis under N.J.S.A. 2C:2-11(b), such as an offender's prior history, may apply to an extenuations analysis under N.J.S.A. 2C:2-11(c).

Turning to the "customary license or tolerance" prong, N.J.S.A. 2C:2-11(a), the Law Revision Commission cited as examples "trespassing upon land in an area where it has traditionally been permitted by the owners or picking up a newspaper from a stand when one does not have the money for it intending to pay the next day." Final Report, supra, § 2C:11-2 Commentary, at 74. In State v. Nevens, 197 N.J. Super. 531, 535 (Law Div. 1984), the court dismissed a shoplifting charge against a paying casino buffet patron who took a few pieces of fruit with him after he ate his lunch. The defendant customarily did that when he left casino buffets, and this particular casino did not post signs telling patrons they had to consume all food in the restaurant.

The plain language of the statute dictates a separate de minimis analysis under each of the three subsections. For example, a non-trivial harm may be de minimis because of extenuating circumstances that place the conduct outside what the Legislature intended to proscribe. Likewise, a non-trivial harm may be de minimis because it was within a customary license or tolerance

that the aggrieved party did not expressly negate. N.J.S.A. 2C:2-11(a).

## II.

Defendant did not dispute that she took her fifteen-month-old daughter to a make-up water safety class, instead of bringing her to the drop-off location for the father's court-ordered parenting time on a Monday between 4:00 and 7:30 p.m. Although the class ran from 6:30 to 7:00 p.m., defendant kept the child the entire evening. The parenting time order, entered after defendant filed for divorce, required that the father's time be supervised. His only other parenting time was alternating Saturdays, from 9:00 a.m. to 7:00 p.m.

Defendant asserted the class was important for the child's safety, because there was a backyard pool where she and the child lived. The regular classes occurred during defendant's parenting time. She alleged that Monday at 6:30 p.m. was the only time available to make up a class the child missed because of illness. In a text message, defendant asked her husband to switch his parenting time to another day. He refused, stating that three other people were going to join him for parenting time.[1] He alleged

---

[1] He elaborated at trial that he had planned something of a family reunion, involving friends and family from far flung places who could not reschedule.

that defendant had previously made plans during his parenting time. He insisted she comply with the court-ordered time. After some back-and-forth between the parents, and defendant's unsuccessful effort to enlist the aid of her mother-in-law, defendant withheld the child.

Plaintiff filed a criminal complaint the next day, alleging a violation of N.J.S.A. 2C:13-4, and asserting defendant had previously interfered with his parenting time. Thereafter, the prosecutor obtained a single count indictment, charging a violation of N.J.S.A. 2C:13-4.

In support of her motions, defendant invoked the de minimis statute without limitation. She argued that the parenting time dispute was best addressed in the Family Part. She stated she had filed for a divorce a few months before the incident, and her husband resorted to the criminal justice system to harass her. She said he previously filed a criminal complaint against her alleging wrongs involving a family business, but then failed to prosecute when it came to trial.

Defendant also denied she intended to permanently deprive her husband of his parenting time, as she offered him other time with the child to make up for the missed Monday parenting time. She contended she was motivated by the child's best interests; she and her husband had in the past mutually agreed to modify the parenting

time schedule; and she denied that she previously deprived him of parenting time. Defendant argued that parents should be encouraged to try to reach such mutual accommodations, and questioned whether her husband was genuinely interested in his parenting time, noting that his mother, not he, often met the child at the pick-up location.

In denying the pre-indictment motion, the trial judge did not expressly apply any of the de minimis statute's three prongs, but evidently applied the triviality prong and not the others.[2] The court reviewed the terms of the interference with custody statute,

---

[2] The Assignment Judge in this case referred the dismissal motion to the trial judge, who was not, at the time, the criminal presiding judge. Defendant does not challenge this referral. However, we note the Supreme Court has not expressly authorized any referrals under N.J.S.A. 2C:2-11, unlike referrals to presiding judges of Graves Act motions under N.J.S.A. 2C:43-6.2. See State v. Nance, 228 N.J. 378, 385-86 (2017) (noting the Legislature authorized assignment judges to grant Graves Act waivers, and the Court permitted them to delegate that authority to presiding judges (citing Administrative Office of the Courts, Memorandum, Motions in Graves Act Cases — Delegable by Assignment Judge to Criminal Presiding Judge (Nov. 21, 2008)); see also Memorandum, Criminal - Motions for Waiver of the Graves Act Mandatory Minimum Term and Sentencing — Clarification Based on State v. Nance (June 12, 2017) n. 1 ("Notwithstanding that statutory language [of the Graves Act], the authority for determining which Superior Court judges handle which matters lies with the Chief Justice and the Supreme Court." (citing Winberry v. Salisbury, 5 N.J. 240, cert. denied, 340 U.S. 877, 71 S. Ct. 123, 95 L. Ed. 638 (1950)). Notably, Rule 1:33-6(a), which addresses an assignment judge's delegation authority, only permits referrals to presiding judges, and only for obligations imposed by the Rules, not statutes.

which makes it a third-degree crime if "[a]fter the issuance of a temporary or final order specifying custody, joint custody rights or parenting time, takes, detains, entices or conceals a minor child from the other parent in violation of the custody or parenting time order." N.J.S.A. 2C:13-4(a)(4). The court rejected defendant's argument that the interference with custody statute was intended to address only an ongoing course of conduct or removal of a child from the State.

The court then reviewed triviality cases. The court contrasted the triviality findings in Smith and Zarrilli, involving three pieces of gum, and a sip of beer, and the non-triviality finding in Evans, involving the theft of a $12.90 item. Although recognizing it as a "one-time event," the court found that defendant's conduct "would fall on the non-de minimis side of that equation." The court stated that it would have been de minimis if one returned a child "several hours late from a visitation time," but not, apparently, the complete deprivation of three-and-a-half hours of parenting time.

The court also denied, without additional explanation, defendant's post-indictment attempt to secure dismissal on de minimis grounds. The court stated it would not revisit the issue.

III.

On appeal, defendant contends she met each of N.J.S.A. 2C:2-11's three subsections, and the trial court erred in denying her motion to dismiss. As the decision to dismiss on de minimis grounds is discretionary, we review the decision for an abuse of that discretion. See Evans, supra, 340 N.J. Super. at 253. At the outset, we ascertain whether the trial court correctly applied the law, because a decision "that lacks a [legal] foundation . . . becomes an arbitrary act." Paradise Enters. v. Sapir, 356 N.J. Super. 96, 102 (App. Div. 2002). We may consider whether the court applied impermissible factors, or failed to apply required ones. See Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (stating an abuse of discretion exists when, among other circumstances, a decision is "based upon a consideration of irrelevant or inappropriate factors" (quoting State v. Baynes, 148 N.J. 434, 444 (1997)). An abuse of discretion also "arises when a decision is made without a rational explanation . . . ." Ibid. (quoting Achacoso-Sanchez v. Immigration and Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

Adhering to this standard of review, we cannot say it was an abuse of discretion for the trial court to determine that defendant's violation of the order was not trivial. The court

12                                                          A-3826-14T1

recognized that the plain language of the statute was not limited to ongoing courses of conduct.  We discern no error of law.

Although the court did not fully address the surrounding circumstances, the court did consider the risk of harm, contrasting the late return of a child, which the court viewed as trivial, and the deprivation of a scheduled parenting time entirely, which the court said was not.[3]  The court also considered defendant's prior history, by assuming the deprivation was an isolated or "one-time event."

We are keenly aware that the prosecution for a violation such as defendant's is a rarity, and the decision to prosecute this case is certainly debatable.  In recommending adoption of an interference with custody provision, the Law Revision Commission warned, "One should be especially cautious in providing penal sanctions applicable to estranged parents struggling over the custody of their children, since such situations are better

---

[3] On the other hand, surrounding circumstances may justify viewing a late return more harshly than complete deprivation of an assigned parenting time.  For example, a parent who is several hours late in returning a child, but does not alert the receiving parent of the situation, may cause much greater anguish and harm to the worried parent than a parent who announces in advance that she intends to retain the child during the other parent's scheduled parenting time, attempts to justify that deprivation in the interests of the child, and offers prompt compensatory time.

regulated by custody orders enforced through contempt proceedings." Final Report, supra, § 2C:13-4 Commentary, at 188.

We also recognize that the Family Part has multiple remedies at its disposal to address violations of parenting time orders, such as occurred here. See R. 5:3-7. More than twenty-five years after enactment of the criminal interference with custody statute, the Legislature strengthened civil remedies for violations of parenting time orders. L. 1997, c. 300. In so doing, the Legislature found that "[p]roceeding criminally in cases where the terms of an order of visitation with a child has failed to be honored may be both difficult and inappropriate." N.J.S.A. 2A:34-23.2(c). One may certainly envisage a more egregious interference with custody than is present here. See, e.g., State v. Jones, 346 N.J. Super. 391 (App. Div.) (mother took her teen-age child to Peru for extended period without telling father in violation of parenting time order), certif. denied, 172 N.J. 181 (2002).

Yet, by grading second-degree interference as that lasting more than twenty-four hours, and third-degree interference as twenty-four hours or less, see N.J.S.A. 2C:13-4(a), the Legislature plainly contemplated that deprivation of less than a day of parenting time may constitute criminal interference with custody. While we agree with defendant that the courts encourage parents to cooperate with one another in sharing the parenting of

a child, and to reach mutually acceptable accommodations, neither the courts nor the statute encourages unilateral action, or an "I know best" attitude that violates another parent's rights under the law, or a court order. Constrained by our standard of review, we shall not disturb the trial court's decision to deny dismissal on triviality grounds.

However, the court was obliged also to address the two other subsections of the statute, and provide a "rational explanation" for rejecting these alternative grounds for de minimis dismissal. See Flagg, supra, 171 N.J. at 571. The court's failure to do so with respect to the "customary license or tolerance" prong, N.J.S.A. 2C:2-11(a), was harmless, as defendant failed to present evidence that unilaterally denying her husband his entire allotted parenting time that day was customary or tolerated within their relationship, or more generally among estranged parents.[4]

We reach the opposite conclusion regarding the court's failure to address if the case "present[ed] such extenuations that it cannot reasonably be regarded as envisaged by the Legislature in forbidding the offense." N.J.S.A. 2C:2-11(c). An "extenuations" analysis should address whether defendant presented

---

[4] The statute does not specify whether the license or tolerance must be customary within the community at large, within the relationship of the affected persons, or both. We need not resolve that question as defendant fails on both bases.

such "extraordinary and unanticipated mitigations for [her] particular conduct," Final Report, supra, § 2C:11-2 Commentary, at 75, that the Legislature could not have "envisaged" a prosecution, N.J.S.A. 2C:2-11(c). The Legislature has expressly stated that criminal prosecutions for failure to honor parenting time may be "inappropriate," N.J.S.A. 2A:34-23.2(c), and the initial drafters of the criminal provision also counseled caution in proceeding criminally, Final Report, supra, § 2C:13-4 Commentary, at 188.[5] See also Fall & Romanowski, Child Custody, Protection & Support, § 26:1-2 at 445 (2017) (stating that "civil means of enforcement should be exhausted before resorting to criminal remedies").

Applying "a rule of reason," Final Report, supra, § 2C:2-11 Commentary, at 75, the trial court here was obliged to consider whether defendant's proffered extenuations, if true, would be sufficient. Defendant contended she acted in her child's interest,

---

[5] We are aware that the Legislature has over the years refined the statute, including clarifying that parents with lawful custodial rights may be guilty of the offense. See L. 1990, c. 104, §1. The Legislature has also upgraded the crime. See L. 1982, c. 199 (making all violations of the statute fourth-degree crimes, where original version included a disorderly persons offense); L. 1990, c. 104, § 1 (upgrading violations to a third-degree crime); L. 1999, c. 190, § 2 (making it a second-degree crime to interfere with custody by taking, detaining, enticing or concealing a child outside the United States or for more than twenty-four hours). The increased punishment justifies closer scrutiny of a de minimis challenge.

not her own. She offered compensatory time. She also did not fully appreciate that defendant had planned a reunion of family and friends with the child, which could not be rescheduled. Although the interference was not trivial, it was limited in duration. She did not secrete the child, or leave her whereabouts to worried speculation. She claimed this was the first time she deviated from the order without her husband's consent. She also claimed her husband has previously resorted to the criminal justice system to harass her.

In determining whether these allegations, if found to be true, suffice as "extenuations" to warrant dismissal, the court need not conclude that what defendant did was permissible. It was not. The question is whether, in light of those circumstances, the case was not the sort envisaged by the Legislature in enacting and thereafter amending the interference with custody statute.

IV.

Defendant's remaining points warrant only brief comment. The prosecutor did not withhold clearly exculpatory evidence from the grand jury, nor engage in misconduct, by declining to respond when a grand juror asked if defendant's violation involved a "single incident." See State v. Hogan, 144 N.J. 216, 238 (1996) ("Only when the prosecuting attorney has actual knowledge of clearly exculpatory evidence that directly negates guilt must such

17                                                          A-3826-14T1

evidence be presented to the grand jury."). First, defendant and her husband disputed whether her violation was an isolated instance. Second, even if it were, that would not exculpate.

The judge's evidentiary rulings were not erroneous, as defendant sought to introduce evidence in mitigation of her actions, as opposed to negate an element of the offense. The trial court's evidentiary rulings are entitled to "substantial deference." State v. Morton, 155 N.J. 383, 453 (1998), certif. denied, 532 U.S. 931, 121 S. Ct. 1380, 149 L. Ed. 2d 306 (2001). We discern no abuse of discretion. See State v. Carter, 91 N.J. 86, 106 (1982). Defendant's plain error challenge to the court's jury instruction lacks sufficient merit to warrant any comment. R. 2:11-3(e)(2).

V.

In sum, we affirm the conviction subject to a remand to the assignment judge to reconsider defendant's motion to dismiss on the grounds set forth in N.J.S.A. 2C:2-11(c).[6] If the assignment judge grants the motion, the conviction shall be vacated. If the assignment judge denies the motion, then defendant may seek appellate review of that order.

---

[6] We are aware that the judge who considered the motion has retired. We do not express an opinion on the assignment judge's power to delegate the decision in this matter, as the issue was not squarely presented.

A-3826-14T1

Affirmed in part, remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION